DECISION AND JUDGMENT ENTRY
This is an appeal from judgments issued by the Lucas County Court of Common Pleas in a suit brought by two members of an ad hoc civic organization against two other members of the same organization, as well as a city and the city's clerk of council. Because we conclude that the trial court properly found immunity for the municipal defendants, correctly granted summary judgment to the defendants on a defamation claim, and properly directed a verdict on contract claims, we affirm.
In 1994, appellants, John Rust and William M. Baker, were members of a Toledo civic group sometimes referred to as the "Downtown Rooters." Appellees, Gerald R. Howard and Donald E. Iiams, were also members of the organization.
The Downtown Rooters organization was formed to oppose the conversion of a vacant downtown Toledo building known as the Portside Festival Marketplace into an interactive science museum known as the Center of Science and Industry ("COSI"). To that end, the Rooters chose to place the issue before the public by way of a proposed amendment to the Toledo city charter which would forbid the structure's use for any purpose other than a "festival marketplace."
To place the proposed charter amendment on the ballot, the Rooters mounted a petition drive. Appellant Rust, an attorney, drafted the language of the petition and included in its "oath of circulation" a pledge that the "circulator has received no money or benefit or promise for obtaining these signatures."
Appellant Baker circulated the petitions. By an arrangement with the head of the Rooters group, he was paid $2 for each petition he completed and submitted. Nevertheless, appellant Baker signed the circulator's oath denying monetary compensation and his signature was notarized by appellant Rust. While the record on this point is not clear, it appears that for some time appellant Baker was unaware that the "no money" pledge was part of the oath and appellant Rust was unaware that appellant Baker was a paid petition circulator. By the time the two of them realized what had happened, Baker had already circulated, and Rust had notarized, one hundred fifty-three petitions containing thousands of names. Appellants believed that, if these faulty petitions were filed, Baker might be exposed to criminal liability for making a false oath and Rust might be subject to an attorney disciplinary action for notarizing a false oath.
When appellants learned of this situation, they notified the members of the Rooters committee who were in charge of the petition drive and obtained an agreement that the erroneous petitions not be filed until appellant Baker obtained substitute signatures on new petitions. Nevertheless, on June 3, 1994, appellee Donald E. Iiams and another committee member took the petitions (including those circulated by appellant Baker) to Larry Brewer, City of Toledo's Clerk of Council, who is an appellee in this case. Appellant Rust, however, intercepted Iiams and managed to convince clerk Brewer to return the petitions. At trial, appellant Rust testified that he then exacted a promise from appellee Iiams not to again attempt to refile the petitions until appellant Baker had an opportunity to replace the faulty petitions and, in no event, not earlier than July 11, 1995.[1]
On June 20, 1994, appellee Iiams and appellee Gerald R. Howard, a Rooters' committee member, filed the petitions. Appellant Rust, on learning of this filing, demanded that the city return the petitions on the ground that the Rooters committee in charge of the petition had not voted unanimously to file them. When the city refused to return the petitions, appellants initiated the suit which underlies this appeal. Appellants accused the city and its clerk of council of improperly accepting and retaining the petitions. The complaint alleged appellee Iiams was guilty of breach of contract and that Iiams and Howard defamed appellants. Appellants also sought a declaratory judgment defining the proper procedure for filing and retaining petitions and declaring the submission of these particular petitions to be unlawful.
Appellees city and clerk of council denied appellants' allegations and moved for summary judgment, asserting that both were entitled to immunity from liability for their actions. Appellee Iiams moved to dismiss on the alternative grounds that appellants had failed to state a claim upon which relief may be granted and/or appellants' complaint was unintelligible.
The trial court granted the municipal appellees' motion for summary judgment on all counts, concluding that both the city and its clerk of council were entitled to immunity. The trial court denied appellee Iiams' motion to dismiss, but later granted both appellee Iiams and appellee Howard summary judgment on appellants' defamation claim. The matter eventually proceeded to a jury trial on breach of contract only.
At trial, the court directed a verdict against appellant Baker following the presentation of his case-in-chief. The matter proceeded to the jury on appellant Rust's breach of contract claim. The jury returned a verdict in favor of appellant Rust and against appellee Iiams only. On its verdict form, the jury entered the term "nominal." When the verdict form was returned to the court, the court requested that the jury continue its deliberations so as to arrive at an actual dollar figure on the verdict form. The jury then retired for more deliberations, returning with a form that now included the phrase "$1000." The court entered a judgment on the verdict for $1,000, but later, on appellee Iiams' motion, reduced the amount of the verdict to $1.[2]
From these judgments, appellants now bring this appeal. Appellant Rust raises the following five assignments of error:
"ASSIGNMENT OF ERROR NO. I.
 "THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR IN GRANTING THE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
"ASSIGNMENT OF ERROR NO. II.
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT ISSUING A DECLARATORY JUDGMENT, UNDER ORC 2721.01 ET SEQ., STATING WHAT WAS RIGHT, AND WHAT WAS WRONG IN ALL DONE IN THIS CASE, AND ALSO FAILED TO PROVIDE A CLEAR STATEMENT OF WHAT CAN AND CANNOT BE DONE IN SIMILAR INITIATIVE AND REFERENDUM ATTEMPTS AS HERE WAS DONE.
"ASSIGNMENT OF ERROR NO. III.
 "THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR IN DENYING PLAINTIFF RUST'S ACTION FOR DEFAMATION OF CHARACTER, REPUTATION AS A COMPETENT LAWYER, EMBARRASSMENT BEFORE THE DOWNTOWN ROOTERS, AND BY THE PUBLICITY IN THE BLADE, THROUGHOUT THE BLADE'S AREA; BECAUSE ANY TIME A LAWYER HAS TO ADMIT A FALSE NOTORIZATION [sic], ALTHOUGH NO HARM TO ANYONE WAS INTENDED; AND THE LAWYER, AS HERE, DID ALL HE COULD TO PREVENT USE OF SUCH PETITIONS, SUBSTANTIAL DAMAGE TO PLAINTIFF RUST HAD BEEN DONE.
"ASSIGNMENT OF ERROR NO. IV.
 "THE CITY OF TOLEDO COMMITTED REVERSIBLE ERROR IN MISLEADING THE DOWNTOWN ROOTERS WHEN THE CLERK OF COUNCIL BREWER ON APRIL 30, 1994, MISLED THE DOWNTOWN ROOTERS IN COUNTING AND VALIDATING THE BAKER PETITIONS WHEN THE CLERK CERTIFIED THE NUMBER OF VALID SIGNATURES AND FOUND THAT THE DOWNTOWN
 ROOTERS WERE ONLY BEHIND BY ABOUT A THOUSAND VOTES, BUT THEN WHEN THE COMMITTEE IN CHARGE CAME UP WITH MORE THAN THE NUMBER OF TOTAL SIGNATURES WHICH THE CITY COUNCIL CLERK ON JUNE 30, 1994, HAD CERTIFIED WERE NEEDED, BUT THEN LATER THE CITY LAW DIRECTOR CLAIMED THAT THEN AT THAT DATE, AFTER THE STATED JULY 15, 1994, DATE WHEN THE COMMITTEE SUPPORTERS COULDN'T GET MORE SIGNATURES, CERTIFIED THAT THE TOTAL NUMBER OF SIGNATURES WERE BELOW THE MINIMUM OF 9,510, THE COMMITTEE'S CAUSE WAS SHOT DOWN BY SUCH BAD FAITH, `MOUSE-TRAPPING' INDEED AND IN TRUTH, MISLEADING AND IN EFFECT FRAUDULENT TREATMENT OF THE COMMITTEE AND THEIR DOWNTOWN SUPPORTERS.
"ASSIGNMENT OF ERROR NO. V.
 "THE TRIAL JUDGE AND COURT STAFF COMMITTED REVERSIBLE ERROR IN GIVING PLAINTIFF RUST A COPY OF THE COURT'S INSTRUCTIONS TO THE JURY WHICH ALLOWED PLAINTIFF RUST TO RECOVER FOR DEFAMATION, DAMAGE AND LOSS OF REPUTATION AS AN ATTORNEY, EMBARRASSMENT, AMOUNT TO ALL PLAINTIFF RUST HAD PRAYED FOR, BUT THEN, AFTER THE COURT CHANGED THE PARTS DEALING WITH THE DAMAGES ALLOWED TO BE FOUND BY THE JURY, THE COURT AND STAFF DID NOT INFORM PLAINTIFF RUST, WHO THEN NATURALLY ARGUED LOSS, AND DAMAGE, OF REPUTATION, AND ASKED FOR THE FULL $10,000.00 SUED FOR; AND FINALLY, THE COURT INSTRUCTED THE JURY THAT PLAINTIFF RUST COULD ONLY RECOVER FOR THE LOSS OF TIME IN TRYING TO RECOVER THE PETITIONS AND IN BEING SUBPOENAED AT THE BOARD OF ELECTIONS HEARINGS — THUS IN EFFECT SHOWING RUST HAD MADE ANOTHER `MISTAKE [sic] — AND IT MADE PLAINTIFF RUST LOOK `LIKE AN ASS' — A DEATH BLOW TO HIS CASE."
Appellant Baker puts forth the following two assignments of error:
"Assignment of Error 1
 "The trial court erred to the prejudice of the Plaintiff-Appellant in overruling the initial request for reconsideration of the court granted summary judgment.
"Assignment of Error 2
 "The trial court erred to the prejudice of the Plaintiff-Appellant in general in overruling the request for new trial."
Appellees Iiams and Howard have not filed briefs in this matter.
 I
As their first assignment of error, both appellants challenge the trial court's decision that appellee city and appellee Brewer were immune from liability in this matter and, therefore, entitled to summary judgment.
On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated
 "* * *(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 67, Civ.R. 56(C).
When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler (1988),38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery (1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel,Inc.(1999), 135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248.
In 1982, the Ohio Supreme Court abrogated the judicial doctrine of sovereign immunity for municipalities. In 1985, the legislature responded by enacting the Political Subdivision Tort Liability Act, 1985 Am.Sub.H.B. 176; see, also Comment, The Ohio Political Subdivision Tort Liability Act: A Legislative Response to the Judicial Abolishment of Sovereign Immunity (1986), 55 U.Cin.L.Rev. 501. Codified as R.C. Chapter 2744, the 1985 legislation divided functions into two categories; governmental functions and proprietary functions. Governmental functions are those activities enumerated in R.C. 2744.01(C)(2) or performed by the political subdivision as required by law, R.C. 2744.01(C)(1)(a), or promote the public good and involve, "* * * activities that are not engaged in or not customarily engaged in by nongovernmental persons." R.C.2744.01(C)(1)(c).
With exceptions not applicable to this case, R.C. Chapter 2744.01 immunizes from tort liability municipal functions which are classified as "governmental." Garrett v. Sandusky (1994), 68 Ohio St.3d 139, 140. Municipal employees are immune from liability unless their acts are outside the scope of official responsibility, malicious or expressly subject to statutory liability. R.C. 2744.02(A)(6)(a), (b), and (c).
In this matter, the trial court ably analyzed the conduct complained of and concluded that it was required by law. We concur with this conclusion. In our view, the acceptance for filing of a referendum petition to amend a city charter is an activity which is exclusively engaged in by government and never engaged in by nongovernmental personnel. Consequently, the activity complained of is a governmental function, without exemption from immunity. Therefore, the appellee city of Toledo is entitled to immunity.
With respect to appellee Brewer, there was no evidence that his performance was outside the scope of his office, malicious or subject to statutory liability. Consequently he, too, is entitled to immunity.
Accordingly, both appellants' first assignments of error are not well-taken.
 II
In his second assignment of error, appellant Rust complains that the court erred in failing to issue the declaratory judgment sought in his initial complaint. The trial court, however, issued exactly such a declaration in its judgment entry of February 24, 1997. The court found that proper procedures were employed by the city and its clerk in receiving appellants' petitions for filing. The court also rejected appellants' arguments that the petitions were invalid because their filing had not been approved unanimously by the Rooters petition committee. The court found that R.C. 3512.02 imposes no requirement of unanimous approval.
Since appellant complains not that the court's declaration was erroneous but that it was nonexistent, this assignment of error is not well-taken.
 III
Appellant Rust, in his third assignment of error, argues that the trial court erred in awarding appellees Iiams and Howard summary judgment on Rust's defamation claim.
Defamation takes two forms: slander, generally considered to be the result of a spoken statement, and libel, generally derived from written statements. Keaton, Prosser and Keaton on Torts (5 Ed. 1984) 771. In this matter, appellant Rust contends that he was defamed as a result of appellees Iiams and Howard filing the petitions upon which Rust had notarized appellant Baker's false oath as a circulator. There is no allegation that appellees made any spoken statement which might be defamatory. Therefore, the issue before the trial court and here is whether filing the faulty petitions was libelous.
 "A `libel' is a false and malicious publication against an individual made with an intent to injure his reputation or to expose him to public hatred, contempt, ridicule, shame, or disgrace or to affect him injuriously in his trade, business or profession. It is defamatory, and actionable at law, if as a proximate consequence of the libel the individual against whom it is published occasions a pecuniary loss." Robb v. Lincoln Publ. Inc. (1996), 114 Ohio App.3d 595, 616, citing Associated Consumers and Dealers v. Better Business Comm. (App. 1925), 3 Ohio Law Abs. 527.
If a published statement respecting a person reflects upon the character of such person by bringing him into ridicule, hatred or contempt, or affects him injuriously in his trade or profession, it is libelous per se. Becker v. Toulmin (1956), 165 Ohio St. 549, 553. However, in order to constitute libel per se, it must appear that the words in the publication of themselves injuriously affect the person. If they can reasonably have another and innocent meaning and are not libelous of themselves, they cannot constitute libel per se. Id. at 554. Where the statement is ambiguous or requires a reference to information which is extrinsic to the face of the document itself, the libel is per quod. Id. at 556. Libel per quod is not actionable absent proof of special damages. Id. at paragraph four of the syllabus. Special damages are those occasioned by the special character of the person wronged. They are not presumed. Special damages must be specifically pleaded and proven by competent evidence. Robb, supra, at 622.
On their face, the petitions filed by appellees Iiams and Howard appear ordinary and innocuous. Only by referring to information not contained in the petition is there even an arguable allegation that appellants have been defamed. The trial court concluded then that the defamation alleged was per quod, requiring that special damages be pleaded and proved. The court concluded that appellant Rust had failed to plead or offer any proof of special damages.
The record supports the trial court's conclusion that appellant Rust failed to plead or submit competent proof, pursuant to Civ.R. 56(E), that he was specially damaged by appellee Iiams' or appellee Howard's alleged libel. Accordingly, appellant Rust's third assignment of error is not well-taken.
 IV
Appellant Rust's fourth assignment of error is disjointed. In it he appears to attack the city of Toledo for its handling of the petition validation process, even though the validation was actually performed by the Lucas County Board of Elections, which is not a party to the suit. Moreover, as we discussed in our consideration of appellant's first assignment of error, the city is statutorily immune from this complaint. Accordingly, appellant's fourth assignment of error is not well-taken.
 V
Prior to submission of the matter to the jury, the trial court had disposed of all matters except appellant Rust's breach of contract/promissory estoppel claim. Appellant Rust was apparently unaware that the elimination of the defamation claim would result in a jury instruction that would limit any damages awarded to only those flowing from the breach of contract. As a result, appellant Rust argued defamation damages to the jury in closing. After the jury retired, appellant Rust explained his confusion to the court and requested a corrective instruction, which was given. In his fifth assignment of error, appellant Rust complains that his confusion concerning the damages instruction irreparably undermined his closing argument.
Juries are presumed to follow the corrective instructions of the trial court. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph four of the syllabus. The trial court gave a corrective instruction which, at the time, was apparently satisfactory to appellant Rust. The court told the jury to ignore appellant Rust's mistake in requesting defamation damages in his closing argument. We presume that the jury obeyed the court's instructions. Accordingly, appellant Rust's fifth assignment of error is not well-taken.
 VI
Appellant Baker, in his second assignment of error, contends that the trial court erred by overruling his motion for a new trial. Civ.R. 59(A) enumerates several grounds for which a trial court may order a new trial. Appellant's motion is, in fact, essentially a reiteration of his trial arguments and does not persuasively address any of the enumerated grounds. Accordingly, appellant Baker's second assignment of error is not well-taken.
On consideration whereof, the judgments of the Lucas County Court of Common Pleas are affirmed. Costs to appellants.
Melvin L. Resnick, J., James R. Sherck, J., CONCUR.
[1] The significance of the July 11, 1994 date is that petitions filed before that date would have involved a special election. Petitions filed later meant that the issue would appear on the ballot after the general election.
[2] Appellant Rust has not raised any assignment of error concerning this reduction.