[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 467.]

RYLL, APPELLANT, *v.* COLUMBUS FIREWORKS DISPLAY COMPANY, INC.; CITY OF REYNOLDSBURG ET AL., APPELLEES.

[Cite as *Ryll v. Columbus Fireworks Display Co., Inc.*, 2002-Ohio-2584.]

*Fireworks—Negligence—Liability of city sponsoring fireworks display when spectator is killed after being hit by exploding firework shell—City not immune under theory of sovereign community under R.C. Chapter 2744 or R.C. 1533.18—Sponsoring a fireworks display is a proprietary function.*

(No. 2000-1904—Submitted October 30, 2001—Decided June 19, 2002.)

APPEAL from the Court of Appeals for Franklin County, Nos. 99AP-1061 and 99AP-1311.

————————————

**PFEIFER, J.**

{¶1} Appellant Deborah Ryll, administrator of the estate of Daniel Ryll, brought suit against appellees, including the city of Reynoldsburg and Truro Township, for the wrongful death of her husband, Daniel Ryll. Mr. Ryll was killed when shrapnel from an exploding firework shell hit him during the July 4, 1996 Reynoldsburg fireworks display.

{¶2} Reynoldsburg held its annual fireworks display in Huber Park. Truro Township, the entity responsible for fire protection in Reynoldsburg, was required by R.C. 3743.54(C) to inspect the site prior to granting a permit for the fireworks discharge setup and was authorized to inspect the premises immediately prior to the exhibition. An employee of Truro Township conducted an inspection on July 3, 1996, to ensure that the spectator area was the proper distance from the fireworks discharge area. The inspector did not determine the types of shells to be used in the fireworks display or detect that the shells had not been buried according to the National Fire Protection Association ("NFPA") standards. The NFPA standards,

which were adopted pursuant to R.C. 3743.53(B), require shells to be buried at a depth of at least two-thirds of their length. No Truro Township Fire Department employee inspected the site after the installation of the fireworks display.

{¶3} On July 4, 1996, prior to the start of the fireworks display, Reynoldsburg used caution tape to designate the spectator safety area. In determining the distance from the discharge at which the tape should be placed, Reynoldsburg did not consult the licensed fireworks shooter about the angulation or the placement of the fireworks. Some spectators were as close as six hundred sixty feet from the discharge area. According to NFPA standards, when vertical twelve-inch shells are to be used in the display, the safety area should be no closer than eight hundred forty feet from the discharge area.

{¶4} During the July 4, 1996 fireworks display, a twelve-inch shell exploded inside its mortar tube. A piece of shrapnel from the explosion struck Mr. Ryll, who was sitting with his family in the designated spectator safety area, approximately six hundred sixty feet from the discharge area. Mr. Ryll died from the resulting injuries.

{¶5} Reynoldsburg and Truro Township each filed separate motions for summary judgment in the trial court, both claiming sovereign immunity. While the motions were pending, appellant reached a settlement agreement with Reynoldsburg and Truro Township that was contingent on the rulings on the motions for summary judgment. Reynoldsburg agreed to pay $100,000 to appellant if its motion was granted and to pay $750,000 if its motion was denied. Truro Township agreed to pay $100,000 to appellant if its motion was granted and to pay $600,000 if its motion was denied. The trial court denied both summary judgment motions.

{¶6} Reynoldsburg and Truro Township appealed. On September 5, 2000, the appellate court reversed the trial court, holding that Reynoldsburg was immune from liability pursuant to R.C. 1533.181. It also found that Truro Township was

2

not liable for activities in Huber Park because the park is located in Reynoldsburg. Accordingly, the court granted summary judgment to both Reynoldsburg and Truro Township. Appellant's motion for reconsideration was denied by the court of appeals on October 24, 2000. Although the court recognized that Huber Park was located within Truro Township, it held that Truro Township could not be liable because it did not have administrative jurisdiction over the park.

{¶7} The cause is now before this court pursuant to the allowance of a discretionary appeal.

{¶8} The issue before this court is whether Reynoldsburg and Truro Township are immune from liability. Some members of this court are on record as believing sovereign immunity to be an unconstitutional infringement of Section 16, Article I of the Ohio Constitution. See *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 141, 624 N.E.2d 704 (Pfeifer, J., concurring). Today, however, we resolve the issue before us in favor of the appellant without addressing the constitutional issue.

{¶9} The court of appeals found that Reynoldsburg was immune from liability based on R.C. 1533.181, which provides:

{¶10} "(A) No owner, lessee, or occupant of premises:

{¶11} "(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

{¶12} "(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

{¶13} "(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user."

{¶14} The court of appeals stated, "R.C. 1533.181 provides owners, lessees, and occupants of property with immunity for all injuries incurred by 'recreational users,' " relying on *Ross v. Strasser* (1996), 116 Ohio App.3d 662, 688 N.E.2d 1120. Without discussing the merits of *Ross*, which is not binding on us in any

event, a plain reading of R.C. 1533.181 reveals the court of appeals' conclusion to be overly expansive.

{¶15} R.C. 1533.181(A)(1) does not state that a recreational user is owed no duty. Instead, R.C. 1533.181(A)(1) immunizes an owner, lessee, or occupant of premises only from a duty "to keep the *premises* safe for entry or use." (Emphasis added.) The cause of the injury in this case had nothing to do with "premises" as defined in R.C. 1533.18(A). The cause of the injury was shrapnel from fireworks, which is not part of "privately-owned lands, ways, waters, and　 * * * buildings and structures thereon." Id. Accordingly, R.C. 1533.181(A)(1) and (2) do not immunize Reynoldsburg. To hold otherwise would allow R.C. 1533.181 to immunize owners, lessees, and occupants for any of their negligent or reckless acts that occur on "premises." The plain language of the statute indicates that the General Assembly had no such intention.

{¶16} R.C. 1533.181(A)(3) does not immunize Reynoldsburg from liability because the injuries were not "caused by any act" of Daniel Ryll. His only act was to be present.

{¶17} In sum, we agree with the trial court that R.C. 1533.181 does not immunize Reynoldsburg from liability in this case, and we reverse the court of appeals on this issue.

{¶18} The court of appeals found Reynoldsburg's other arguments moot. Because of our decision, they are not, and we will now address the only one of those arguments brought to this court: whether Reynoldsburg is entitled to immunity under R.C. Chapter 2744.

{¶19} It is uncontested that Reynoldsburg is a political subdivision. Therefore, the general rule of R.C. Chapter 2744 "that political subdivisions are not liable in damages" is applicable. *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141. We use a three-tier analysis to determine whether the general rule immunizes Reynoldsburg from liability in this

case. See id. at 556, 733 N.E.2d 1141; *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 697 N.E.2d 610.

**{¶20}** The first step is to determine whether sponsoring a fireworks display is a governmental function. "R.C. 2744.01(C)(2) lists specific functions expressly designated as governmental functions." *Greene Cty.*, 89 Ohio St.3d at 557, 733 N.E.2d 1141. None of these is applicable. Accordingly, we look to R.C. 2744.01(C)(1), which provides that a governmental function is any of the following:

**{¶21}** "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

**{¶22}** "(b) A function that is for the common good of all citizens of the state;

**{¶23}** "(c) A function that promotes or preserves the public peace, health, safety or welfare [and] that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons * * *."

**{¶24}** R.C. 2744.01(C)(1)(a) does not apply because Ohio does not require Reynoldsburg to sponsor a fireworks display. R.C. 2744.01(C)(1)(b) does not apply because the fireworks display benefited "only some of the citizens of the state, not all citizens." *Greene Cty.*, 89 Ohio St.3d at 559, 733 N.E.2d 1141. R.C. 2744.01(C)(1)(c) does not apply because sponsoring a fireworks display is an activity customarily engaged in by nongovernmental persons. The law regarding political subdivision liability is different when the political subdivision is engaged in a proprietary function. R.C. 2744.01(G)(1)(b) defines "[p]roprietary function" as "one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." In short, sponsoring a fireworks display is not a governmental function,

it is a proprietary function.  Accordingly, Reynoldsburg is not entitled to sovereign immunity based on R.C. 2744.01(C).

**{¶25}** The second tier of the analysis is to determine whether any exceptions to the general rule of immunity apply.  R.C. 2744.02(B)(2) states that, with certain exceptions, "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."  Having determined that sponsoring a fireworks display is a proprietary function, it is obvious that the R.C. 2744.02(B)(2) exception to the general rule of immunity applies and that it is possible for Reynoldsburg to be liable.

**{¶26}** Accordingly, in the third tier of the analysis, we determine whether any defenses apply.  R.C. 2744.03.  After our review of R.C. 2744.03 and the record, we conclude that none of the defenses set forth in R.C 2744.03 applies to this case.  See *Greene Cty.*, 89 Ohio St.3d at 561, 733 N.E.2d 1141.

**{¶27}** In the interests of judicial economy, we have reviewed this issue even though the court of appeals did not.  Because this case involves determining whether summary judgment was appropriate, we have construed the evidence most strongly in favor of the nonmoving party.  See *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.  Based on the above analysis, we conclude that Reynoldsburg is not entitled to summary judgment on the issue of sovereign immunity.

**{¶28}** R.C. 2744.02(B)(2) does not apply, however, unless Reynoldsburg acted negligently.  There is evidence in the record that Reynoldsburg designated a safety area closer to the discharge area than called for by NFPA standards.  Construing this evidence most strongly in favor of the nonmoving party, we conclude that there are factual issues that cannot be resolved as a matter of law.  Therefore, summary judgment cannot be proper with respect to negligence.

**{¶29}** Our analysis of the issues before us reveals that the trial court did not abuse its discretion when it denied Reynoldsburg's motions for summary judgment. Accordingly, we reverse the judgment of the court of appeals and remand to the trial court for the purpose of ensuring that the agreement between appellant and Reynoldsburg is enforced.

**{¶30}** Next, we analyze whether Truro Township is entitled to immunity under R.C. Chapter 2744. Again, we follow the three-tier analysis discussed above. The first step is to determine whether inspecting a fireworks display is a government function. The court of appeals ruled that Truro Township's inspection of the fireworks display was a government function, relying on R.C. 2744.01(C)(2)(a) and R.C. 3743.54(C).

**{¶31}** R.C. 2744.01(C)(2)(a) provides:

**{¶32}** "(2) A 'governmental function' includes, but is not limited to, the following:

**{¶33}** "(a) The provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection."

**{¶34}** Among the duties of a fire chief is to issue permits to licensed exhibitors of fireworks after inspecting the premises from which the fireworks will be fired. R.C. 3743.54(C). We agree with the court of appeals that Truro Township's inspection of the fireworks display was a governmental function.

**{¶35}** The second step is to determine whether any exceptions to the general rule of immunity apply. In defending against Truro Township's motion for summary judgment, appellant asserted that R.C. 2744.02(B)(3) applied to Truro Township's inspection of the fireworks display. R.C. 2744.02(B)(3) provides:

**{¶36}** "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep * * * public grounds within the political subdivisions open, in repair, and free from nuisance."

**{¶37}** The court of appeals found that Huber Park was located within Reynoldsburg and not within Truro Township. It is uncontested that Huber Park is located within Reynoldsburg. This fact does not mean that Huber Park cannot also be within Truro Township. Our reading of the record reveals that Reynoldsburg residents vote for Truro Township Trustees and that a former Truro Township Trustee believes Huber Park to be located within Truro Township. Further, our reading of the statute indicates that ownership of the park is not relevant. Because this case involves determining whether summary judgment was appropriate, we must construe the evidence most strongly in favor of the nonmoving party. See *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. We conclude that summary judgment is inappropriate on this issue because Huber Park is not as a matter of law not within Truro Township. Accordingly, we reverse the court on appeals on this issue.

**{¶38}** The record reveals that Truro Township inspected the premises prior to installation in accordance with R.C. 3743.54. Satisfying this statutory requirement does not necessarily relieve Truro Township from liability for "failure to keep [Huber Park] free from nuisance." R.C. 2744.02(B)(3). Truro Township knew that there was going to be a fireworks display and knew that fireworks displays are potentially lethal. Nothing in the record indicates that Truro Township attempted to determine whether the safety rules required by R.C. 3743.53 were followed. Construing this evidence most strongly in favor of the nonmoving party, we cannot say as a matter of law that Truro Township kept Huber Park free from nuisance. Therefore, summary judgment cannot be proper with respect to nuisance.

**{¶39}** Our analysis of the issues before us reveals that the trial court did not abuse its discretion when it denied Truro Township's motion for summary judgment. Accordingly, we reverse the judgment of the court of appeals and remand to the trial court for the sole purpose of ensuring that the agreement between appellant and Truro Township is enforced.

Judgment reversed<br>and cause remanded.

RESNICK, J., concurs.

DOUGLAS and F.E. SWEENEY, JJ., concur in judgment only.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**DOUGLAS, J., concurring.**

**{¶40}** I concur in the judgment of the majority. I do so, however, for different reasons.

**{¶41}** In my view, despite the conclusions reached by the majority, I would hold that political subdivisions are no longer entitled to immunity pursuant to R.C. 1533.181. R.C. 1533.181 does not, by its own terms, apply to publicly owned property. Notwithstanding that the majority did not cite or rely on *Johnson v. New London* (1988), 36 Ohio St.3d 60, 521 N.E.2d 793, it must have accepted the court's holding in that case. In *Johnson*, 36 Ohio St.3d 60, 521 N.E.2d 793, syllabus, we held, "A political subdivision has derivative immunity from tort liability to a recreational user of municipal property to the same extent that an owner of private land has, pursuant to R.C. 1533.181, immunity from tort liability to a recreational user of private property. (*Enghauser v. Eriksson Engineering Ltd.* [1983], 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, followed; *Marrek v. Cleveland Metroparks Bd. of Commrs.* [1984], 9 Ohio St.3d 194, 9 OBR 508, 459 N.E.2d 873, clarified.)"

**{¶42}** The cause of action in *Johnson* arose after this court abolished common-law municipal sovereign immunity in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, paragraph two of the syllabus, and *Enghauser*, 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, paragraphs one and two of the syllabus, but prior to the enactment of R.C. Chapter 2744, the Political Subdivision Tort Liability Act. Am.Sub.H.B. No. 176, 141 Ohio Laws, Part I, 1699, 1703-1724. Thus, in the absence of judicially created and statutorily

enacted sovereign immunity (the period between *Enghauser*, decided July 20, 1983, and the enactment of R.C. Chapter 2744, effective November 20, 1985), municipalities were, with the exceptions of judicial, legislative, and discretionary executive functions, subject to suit in the same manner as private litigants. *Enghauser*, 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, paragraph two of the syllabus. In *Johnson*, we stated, "Since owners of private land are statutorily immune from tort liability to recreational users, and municipalities have, pursuant to *Enghauser*, only the same liability for negligent acts as do private persons, municipalities are immune from liability to recreational users of municipal property." *Johnson*, 36 Ohio St.3d 60, 63, 521 N.E.2d 793.

{¶43} Because the facts giving rise to *Johnson* took place prior to the legislature's enactment of R.C. Chapter 2744, *Johnson* is inapplicable. This may be, in fact, the reason that the majority does not cite *Johnson*. However, as previously indicated, the majority cannot reach its conclusion with regard to R.C. 1533.181 without the application of *Johnson*. In any event, this court held in *Johnson* that political subdivisions are subject to suit by recreational users of their property in the same manner as private parties. *Johnson*, 36 Ohio St.3d at 63-64, 521 N.E.2d 793. However, pursuant to R.C. Chapter 2744, political subdivisions are no longer subject to suits in the same manner as private parties. R.C. 2744.02(A)(1) provides, "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision * * *." Therefore, it follows that political subdivisions should no longer be entitled to immunity derived from R.C. 1533.181, and the holding of *Johnson* should be limited.

{¶44} Furthermore, the majority states, "Some members of this court are on record as believing sovereign immunity to be an unconstitutional infringement of Section 16, Article I of the Ohio Constitution. See *Garrett v. Sandusky* (1994), 68

10

Ohio St.3d 139, 141, 624 N.E.2d 704 (Pfeifer, J., concurring)." While I agree with the conclusion reached in Justice Pfeifer's concurrence in *Garrett*, I disagree slightly with the analysis he applied. In *Community Ins. Co. v. Ohio Dept. of Transp.* (2001), 92 Ohio St.3d 376, 750 N.E.2d 573, I pointed out that *Garrett* relies on the second sentence of Section 16, Article I, Ohio Constitution, which provides, "Suits may be brought against the *state*, in such courts and in such manner, as may be provided by law." (Emphasis added.) *Id.* at 387-388, 750 N.E.2d 573 (Douglas, J., dissenting). The waiver of immunity, expressed in the second sentence of Section 16, Article I, removes the cloak of sovereign immunity that was traditionally granted to the state. However, political subdivision immunity did not originate with the traditional immunity accorded to the state. *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 358-361, 750 N.E.2d 554 (The concept of state immunity evolved from the English common-law concept that "the King can do no wrong." Local government immunity can be traced to the English case of *Russell v. Men of Devon* [K.B.1788], 100 Eng.Rep. 359, and the misapplication of *Russell* by a Massachusetts court in 1812). Moreover, the Revised Code specifically distinguishes between the state and political subdivisions, providing that " '[s]tate' does not include political subdivisions." R.C. 2744.01(H) and R.C. 2743.01(A).

{¶45} For these reasons, I do not believe that reference to the word 'state' in the second sentence of Section 16, Article I, has any application to political subdivisions. Instead, I believe it to be a proper conclusion that a political subdivision is not entitled to immunity based upon the right-to-remedy provision of the first sentence of Section 16, Article I. *Community,* 92 Ohio St.3d at 387-388, 750 N.E.2d 573 (Douglas, J., dissenting). Additionally, I believe that R.C. Chapter

2744 violates the right to trial by jury provided for by Section 5, Article I, Ohio Constitution. *Butler*, supra, 92 Ohio St.3d 354, 370-373, 750 N.E.2d 554.[1]

{¶46} For the foregoing reasons, I concur in judgment only.

F.E. Sweeney, J., concurs in the foregoing opinion.

———————————

**Cook, J., dissenting**.

{¶47} This case features intriguing legal issues within the context of a tragic set of circumstances. But even when it is "tempting to us to consider" important legal questions, we must decline to do so when "the issue being appealed to us does not emanate from an order which is final and appealable." *N. Canton v. Hutchinson* (1996), 75 Ohio St.3d 112, 114, 661 N.E.2d 1000. Because there was never a final appealable order rendered by the trial court in this case, this court is without jurisdiction to decide the merits of the cause. I therefore respectfully dissent.

{¶48} An order is not final and appealable unless it falls within one of the categories of orders described in R.C. 2505.02. See *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus. It is well established that the orders appealed by Reynoldsburg and Truro Township to the court of appeals in this case—orders *denying* their respective summary-judgment motions—do not generally constitute final appealable orders under R.C. 2505.02. See, e.g., *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 186, 743 N.E.2d 901; *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 90, 554 N.E.2d 1292. In this case, however, the court of appeals found the existence of final appealable orders because of what it described as the parties' "high-low" settlement agreement. Because the parties had "determined all issues before the trial court" by way of settlement, the court of appeals found that the *entire action* had been determined, effectively

———————————

1. For a full discussion of sovereign immunity, see *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554, and *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 331-344, 662 N.E.2d 287 (Douglas, J., dissenting).

converting the trial court's denial of summary judgment into a final appealable order.

{¶49} Although not citing it expressly, the court of appeals apparently relied upon R.C. 2505.02(B)(1) to find that the trial court's order was final and appealable. This provision defines as "final" an order that "affects a substantial right in an action that in effect determines the action and prevents a judgment." The court of appeals made no express determination concerning the existence of these three factors. See *Stewart v. Midwestern Indemn. Co.* (1989), 45 Ohio St.3d 124, 126, 543 N.E.2d 1200 (to be a final appealable order under this definition, the order must affect a substantial right, determine the action, *and* prevent a judgment). But because the parties' settlement amount depended upon the way that the trial court ruled on the immunity issues, the court of appeals found that the orders denying summary judgment fit within R.C. 2505.02(B)(1) because they affected a substantial right (i.e., the immunity of Reynoldsburg and Truro Township) and effectively determined the action in Ryll's favor (i.e., the order "decided" that the city and township would pay the larger settlement amounts). The court of appeals' rationale is flawed in at least three respects.

{¶50} First, the court of appeals essentially allowed the parties to *create* a final appealable order by way of settlement. There is no authority for the proposition that parties to an action may convert an otherwise interlocutory order into a "final order" under R.C. 2505.02. Indeed, this court has rejected attempts by litigants and courts to create a final appealable order from a nonappealable interlocutory order. See *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (trial court's use of Civ.R. 54[B] language does not turn an interlocutory order into a final appealable order); *State ex rel. Overmeyer v. Walinski* (1966), 8 Ohio St.2d 23, 24, 37 O.O.2d 358, 222 N.E.2d 312 ("Mandamus cannot be used * * * [to] create an appeal from an order which is not a final order"). If this court endorses the practice of converting nonappealable interlocutory orders into final

SUPREME COURT OF OHIO

appealable ones, it should explain why, when, and how that may occur under our substantive and procedural law rather than approving of it sub silentio in this case.

{¶51} Second, the court of appeals' rationale relies on an unduly expansive interpretation of the language in R.C. 2505.02(B)(1) requiring that a final order be one "that in effect determines the action." The court of appeals decided that the trial court's denial of summary judgment determined the action simply because of the parties' contingent settlement arrangement. But "in effect determines the action" refers to the nature of the order itself, without reference to any settlement by the parties. See *Legg v. Fuchs* (2000), 140 Ohio App.3d 223, 227, 746 N.E.2d 1195 ("the relevant inquiry is whether the [order] adjudicated all the issues"); cf. *Yonkings v. Wilkinson* (1999), 86 Ohio St.3d 225, 229, 714 N.E.2d 394 (observing that the order at issue "determined the action because it answered the only question presented by the action"). In this case, the trial court's order simply denied the defendants' motions for summary judgment, finding that neither defendant was entitled to immunity and that there remained genuine factual issues for the parties to litigate. There is nothing about these orders that "determines" the action; indeed, a trial court denies summary judgment because there remain *undetermined* issues that preclude judgment as a matter of law. See Civ.R. 56(C).

{¶52} Finally, even if I could agree with the court of appeals that the trial court's denial of summary judgment "determined the action," the court of appeals' finding of final appealability remains incorrect. The court of appeals failed to explain why the trial court's order prevented a judgment within the meaning of R.C. 2505.02(B)(1). There is nothing about the denial of a summary-judgment motion that prevents a judgment. See *Celebrezze*, 51 Ohio St.3d at 90, 554 N.E.2d 1292. And nothing in the nature of the parties' settlement agreement changes this legal truism. Indeed, if the court of appeals had properly dismissed the defendants' appeal, the matter would have remained pending until there had been a judgment,

whether a judgment of dismissal or a judgment in favor of one of the parties after further proceedings in the trial court.

{¶53} Because the trial court's order denying summary judgment was not a final appealable order, the court of appeals did not have jurisdiction to entertain the merits of the appeal before it. *Stevens*, 91 Ohio St.3d at 186, 743 N.E.2d 901; see, also, Section 3(B)(2), Article IV, Ohio Constitution. And because the court of appeals lacked jurisdiction, we are likewise without jurisdiction to reach the merits of the cause. *Stevens*, 91 Ohio St.3d at 195-196, 743 N.E.2d 901. I would therefore vacate the judgment of the court of appeals, dismiss the appeal, and remand this cause to the trial court for further proceedings.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

_____

Karr & Sherman Co., L.P.A., Keith M. Karr, Robert P. Sherman and Suzanne E. Kelly, for appellant.

Gallagher, Gams, Pryor & Littrell and Timothy J. Ryan, for appellee Truro Township.

Law Offices of Alan Wayne Sheppard, Alan Wayne Sheppard and Scyld D. Anderson, for appellee city of Reynoldsburg.

Boyk & Crossmock, L.L.C., and Steven L. Crossmock, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

_____