**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0165n.06

Case No. 15-3621

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 23, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RIGHT-NOW RECYCLING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| FORD MOTOR CREDIT COMPANY, LLC, | ) | OHIO |
| | ) | |
| Cross-Claim Defendant-Appellee, | ) | |
| | ) | |
| CITY OF BLUE ASH, OHIO, | ) | |
| | ) | |
| Cross-Claim Plaintiff-Appellant. | ) | |

BEFORE: SILER, CLAY, and KETHLEDGE, Circuit Judges.

**SILER**, Circuit Judge. Right-Now Recycling, Inc. ("Right-Now") sued Ford Motor Credit Company, LLC ("Ford Credit") and the City of Blue Ash, Ohio ("the City"), seeking damages related to the seizing of a pair of Right-Now's work trucks by the City and the release of the trucks to Ford Credit. After the district court granted summary judgment to Ford Credit on Right-Now's claims against it and denied summary judgment to the City on Right-Now's due process claim against it, the City settled with Right-Now.

The City and Ford Credit, cross-claim parties in the underlying suit, now dispute which of them should foot the bill for the City's settlement with Right-Now. Specifically, the City appeals the district court's denial of summary judgment to the City and grant of summary

judgment to Ford Credit on the City's indemnification claims against Ford Credit. For the following reasons, we **AFFIRM**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Right-Now Recycling, Inc. acquired from Ford Credit two work trucks pursuant to retail installment contracts that provided that "[y]ou will be in default if … [y]our vehicle is seized by any local, state, or federal authority and is not promptly and unconditionally returned to you." After Right-Now was implicated in criminal activity involving receipt of stolen property, the City searched Right-Now's premises and seized the trucks.

Although the City initially retained possession of the trucks as the criminal investigation unfolded, it ultimately decided to release the trucks to Ford Credit. Accordingly, Ford Credit executed (1) two seized property releases that conditioned the trucks' release on Ford Credit's acknowledgment that if it returned the trucks to Right-Now, Ford Credit could lose its innocent-owner rights for the trucks, and (2) two hold harmless agreements (the "Agreements") that "Ford Motor Credit agrees to indemnify and hold [the City] harmless for any liability or claim made against [the City] arising out of [the City's] releasing of this vehicle to [Ford Credit]."

After the City transferred the trucks to Ford Credit in 2011, Right-Now requested the return of the trucks. However, because the City had not "promptly and unconditionally returned" the seized trucks or otherwise released its rights, Ford Credit held Right-Now in default of the installment contracts. To preserve its innocent-owner rights, Ford Credit refused to return the trucks unless they were unconditionally released by the City. Subsequently, the City disclaimed any further interest in the trucks, after which Ford Credit relinquished the trucks to Right-Now.

Following removal of its state court suit against Ford Credit for breach of contract and unjust enrichment, Right-Now filed an amended complaint including the City as a defendant,

and claiming that the City had violated Right-Now's due process rights by "seizing and depriving Right-Now of items that were not used in criminal activity and transferring seized property of Right-Now without providing Right-Now notice and a reasonable opportunity to be heard." The City filed cross-claims against Ford Credit, asserting that Right-Now's action fell within the indemnification language in the Agreements.

The district court granted summary judgment to Right-Now on its due process claim against the city, to Ford Credit on both Right-Now and the City's claims against it, and denied summary judgment on the City's cross-claims against Ford Credit. Regarding the City's indemnification-related claims against Ford Credit, the district court held that Ford Credit had no duty to indemnify the City because the City's constitutional violation (i.e., its failure to provide Right-Now with notice and an opportunity to be heard) "occurred *before* the trucks were released, and Ford's obligation to indemnify was not triggered until *after* the trucks were released." The City subsequently settled with Right-Now, and this appeal followed.

## STANDARD OF REVIEW

This court reviews a district court's grant or denial of summary judgment de novo. *Vill. of Grafton v. Rural Lorain Cnty. Water Auth.*, 419 F.3d 562, 565 (6th Cir. 2005).

## DISCUSSION

### I. Ford Credit Did Not Breach the Agreements

The Agreements between Ford Credit and the City state as follows:

Ford Motor Credit agrees to indemnify and hold [the City] harmless for any liability or claim made against [the City] arising out of [the City's] releasing of this vehicle to [Ford Credit[1]].

---

[1] The Agreements designated that the trucks would be released to Automobile Recovery, the agency contracted by Ford Credit to receive and retain the trucks on its behalf.

> Anything contained herein to the contrary notwithstanding, the liability of Ford Motor Credit to [the City] hereunder shall be limited to the value of the vehicle released to Ford Motor Credit or its agent.

The City argues that, given the Agreements' "any liability or claim" language, Ford Credit's "indemnification obligations were triggered when Right-Now made a demand for a legal remedy."[2] However, the district court properly determined that Right-Now's constitutional claim did not "aris[e] out of [the City's] releasing" of the trucks to Ford Credit, but instead arose "from the failure of the City to give notice to Right-Now prior to release[.]"

## A.    The City Violated Right-Now's Constitutional Rights

To make out its municipal liability claim, Right-Now needed to establish that an official City policy was responsible for the alleged due process violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). On this point, the district court observed that "Right-Now's claim is not based on . . . a single decision, but an official written policy," and "there is no dispute that [the City's] Policy 19.002 . . . controls the circumstances presented in this case." Importantly, the policy does not require the City to provide the owner with notice or the opportunity to be heard before releasing seized property to a lien holder.  Accordingly, the district court concluded that a "straightforward execution of the City's official policy . . . encouraged unconstitutional behavior."

Upon settling with Right-Now, the City abandoned its challenge to the district court's ruling that it violated Right-Now's due process rights by failing to give Right-Now notice and an opportunity to be heard. *Cf. Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012) ("Plaintiffs here made no mention of municipal liability in their opening brief, even though they were clearly on

---

[2] In its brief, Ford Credit states that "[t]o simplify this appeal, Ford Credit will no longer pursue its lack of consideration argument; Ford Credit acknowledges that the Agreements are valid and enforceable.  This moots several of the City's arguments and enables the Court to focus on the language of the Agreements." Accordingly, we need not address the parties' consideration-related arguments.

notice that the district court decided the municipal liability issue against them and that it was a proper issue for appeal. Their claims are thus abandoned."); *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) ("[A]n appellant abandons all issues not raised and argued in its initial brief on appeal." (quoting *United States v. Still*, 102 F.3d 118, 122 n.7 (5th Cir. 1996))). Accordingly, we will take the City's constitutional violation as a given in our analysis of the City's claims against Ford Credit.

### B. The Agreements Do Not Cover the City's Constitutional Violation

The district court held that the Agreements did not obligate Ford Credit to indemnify the City because the City's liability arose from its own unconstitutional actions that preceded the release. We agree.

As a matter of Ohio law, "indemnity agreement[s] must be strictly construed and any ambiguity must be decided against the indemnitee," *Hydro-Dyne, Inc. v. Ecodyne Corp.*, 812 F.2d 1407, at *8 (6th Cir. 1987) (quoting *Linkowski v. General Tire & Rubber Co.*, 371 N.E.2d 553, 556–57 (Ohio Ct. App. 1977)).

Under the plain language of the Agreements, Ford Credit was obligated to indemnify the City only for claims and liability "arising out of [the City's] releasing of this vehicle to [Ford Credit]." According to the City, "Right-Now's claims, however characterized or pled, were solely premised on the release of the Trucks." The City, however, misses the point. The sole claim Right-Now asserted against the City was a procedural due process claim that "relate[d] only to the City's alleged failure to provide notice and a reasonable opportunity to be heard." "Thus, the injury that stem[med] from [the City's] denial of due process is not the . . . property that was taken from the plaintiff, but the fact that it was taken without sufficient process." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 222 (5th Cir. 2012) (citing *Nasierowski Bros.*

*Investment Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991)). Even if the deprivation technically occurred at the release of the trucks, *see Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990), "the due process *injury*"—the crux of Right-now's claim—occurred "at the time the process [wa]s denied." *Bowlby*, 681 F.3d at 222 (emphasis added).

Even under the City's broad interpretation of "arising out of"—i.e., "flowing from, having its origin in, or growing out of," *see Westfield Ins. Co. v. Factfinder Mktg. Research, Inc.*, 860 N.E.2d 145, 154 (Ohio Ct. App. 2006)—Right-Now's claim flowed from, originated in, and grew out of the procedural prelude to, and not the technical consummation of, the release. With a straightforward reading of the plain text, and as a matter of common sense,[3] it would be incorrect to state that the due process injury flowed from, originated in, and grew out of the trucks' release; Right-Now's claim did not assert that the City's release of the trucks was unconstitutional in itself, but rather, that the locus and "responsible condition," *Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 936 (Ohio 2011) (quoting *Eyler v. Nationwide Mut. Ins. Co.*, 824 S.W.2d 855, 857 (Ky. 1992)), of the claim clearly rested in the City's policy-based actions/inaction that preceded the release.[4]

Moreover, to the extent that the Agreements' meaning is at all ambiguous, the "indemnity agreement must be strictly construed and any ambiguity must be decided against the

---

[3] Moreover, as the district court aptly noted, the fact that "[t]he damages provision ties the limit of Ford's potential liability under the Hold Harmless Agreements directly to the value of the Trucks . . . indicat[es] that Ford shall be liable for physical damages or other physical loss or disposal of the vehicle after the seizing authority releases the vehicle."

[4] In a somewhat related case, this court recently rejected an environmental indemnification claim premised on "any claim arising out of" certain post-closing operations, in which the root cause of the harm was not the cleanup of the contamination, but what "caused the contamination . . . in the first place." *Goodyear Tire & Rubber Co. v. Lockheed Martin Corp.*, 2015 WL 4567545, at *5 (6th Cir. July 30, 2015).

indemnitee," *Hydro-Dyne, Inc.*, 812 F.2d at *8 (quoting *Linkowski*, 371 N.E.2d at 556–57)—in this case, against the City.

Accordingly, the district court correctly held that the indemnification provision was not triggered because the City's liability did not "'arise out of' the release of the Trucks, but instead ar[ose] out of the City's failure to provide Right-Now prior notice of the City's intent to transfer possession of the Trucks to Ford."

## II.     Promissory Estoppel Is Unavailable Because of the Agreements' Enforceability

Because the City's promissory estoppel claim depends upon the proposition that the Agreements are not enforceable, Ford Credit's acknowledgment of the Agreements' enforceability voids the issue of promissory estoppel. Promissory estoppel is not applicable where the parties' claims are governed by a valid contract. *See Gibson Real Estate Mgmt., Ltd. v. Ohio Dep't of Admin. Servs.*, 2006 WL 322304, at *3 (Ohio Ct. Cl., Jan. 4, 2006); *see also Olympic Holding Co. v. ACE Ltd.*, 909 N.E.2d 93, 100 (Ohio 2009) ("The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice.") (quoting *Doe v. Univision Television Group, Inc.*, 717 So.2d 63, 65 (Fla. App. 1998)); *Hughes v. Oberholtzer*, 123 N.E.2d 393, 396 (Ohio 1954) ("It is generally agreed that there can not [sic] be an express agreement and an implied contract for the same thing existing at the same time.").

## III.     The City's Common-Law Indemnification Claim Fails Because the City Is Primarily Liable for Right-Now's Damages

The City also asserts that it can recover from Ford Credit under a common-law indemnification theory.  Under Ohio's rule of common-law indemnification, a person who is only "secondarily liable" for a wrongful act may "ha[ve] a right of indemnity from the person [who] commit[ed] the wrongful act," who is "primarily liable" for the harm.  *Satterfield v. St. Elizabeth*

*Health Ctr.*, 824 N.E.2d 1047, 1050 (Ohio Ct. App. 2005) (quoting *Travelers Indem. Co. v. Trowbridge*, 321 N.E.2d 787, 789 (Ohio 1975)). The district court correctly concluded that "the City bears primary liability for any injuries caused by the failure to provide notice and an opportunity to be heard." The injury did not occur during the period of time that Ford held the trucks. Accordingly, the City's common-law indemnification theory must fail.

**AFFIRMED.**