[Cite as *Estate of Tokes v. Dept. of Rehab. & Corr.*, 2019-Ohio-1794.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Estate of Reagan Tokes, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 18AP-723 |
| | | (Ct. of Cl. No. 2018-846JD) |
| Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on May 9, 2019

**On brief:** *Robert B. Newman; O'Hara, Taylor, Sloan & Cassidy*, and *Michael J. O'Hara*, for appellant. **Argued:** *Robert B. Newman.*

**On brief:** *Dave Yost*, Attorney General, *Anne Berry Strait, Peter E. DeMarco*, and *Jeanna V. Jacobus*, for appellee. **Argued:** *Anne Berry Strait.*

APPEAL from the Court of Claims of Ohio

BEATTY BLUNT, J.

{¶ 1} In this wrongful death and survivorship action, plaintiff-appellant, Estate of Reagan Tokes ("Estate"), appeals the decision of the Court of Claims dismissing the Estate's complaint against defendant-appellee, Department of Rehabilitation and Correction ("DRC"), under Civ.R. 12(B)(6). Because we find that the public duty immunity statutes are both constitutional and applicable to the Estate's claims, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} At the outset, we are compelled to note the senseless, unquantifiable suffering any violent crime imposes on victims, their families and their loved ones. We note our role in such cases, like the one presently before us, requires us to examine the requisite issues presented with judicial, not emotional, awareness.

{¶ 3}   According to the complaint, Brian Golsby was convicted of robbery and attempted rape in 2010.  (Compl. at ¶ 11.)  That conviction yielded him, inter alia, a six-year prison term and a five-year mandatory post-release control period.  (Compl. at ¶ 11, 12.)  His incarceration for those crimes ended in November 2016, and his post-release control period then began.  (Compl. at ¶ 11.)  DRC labeled him a high risk offender and placed him in the EXIT Program, a half-way house operated by former defendant NISRE, Inc.[1] (Compl. at ¶ 14, 23.)

{¶ 4}   DRC outfitted Golsby with an ankle monitor to comport with a condition of his post-release control.  (Compl. at ¶ 15, 16.)  The monitor could provide DRC with Golsby's exact location contemporaneously with his movements.  (Compl. at ¶ 17-18.)  DRC also instituted a curfew for Golsby.  DRC did not program the monitor to allow for automatic notification of curfew violations.  (Compl. at ¶ 21.)

{¶ 5}   Between December 2016 and January 2017, Golsby was sanctioned for violating the terms of his probation three times.  (Compl. at ¶ 25-28.)  DRC did not arrest him or impose more restrictive conditions on him for any of those violations.  (Compl. at ¶ 28.)  Then, between late January and early February 2017, he engaged in a violent "crime wave" that culminated in him raping and murdering Reagan Tokes ("Ms. Tokes") on February 8, 2017.  (Compl. at ¶ 29-48).

{¶ 6}   Police officers arrested him two days later.  (Compl. at ¶ 48.)  The state charged him with aggravated murder, aggravated robbery and rape.  *Id.*  A jury subsequently found him guilty on all counts, and the trial court sentenced him to life in prison without parole.  (Compl. at ¶ 48-49.)

{¶ 7}   The Estate's May 2018 complaint in the Court of Claims asserts a wrongful death claim under R.C. 2125.01 et seq. and a "survivor's action" under R.C. 2305.21 against DRC.[2] (Compl. at ¶ 53-56, 61-63.)  The Estate declares DRC's negligent monitoring and supervision of Golsby led to Ms. Tokes' death such that DRC is liable for Golsby's actions.  In particular, the Estate claims DRC was negligent in failing to: (1) violate and arrest Golsby

---

[1] The Court of Claims dismissed NISRE, Inc. as a party the same day the Estate's complaint lodged because "R.C. 2743.02(E) provides that the only defendant in original actions in the Court of Claims is the State." *Rooney v. Ohio State Hwy. Patrol*, 10th Dist. No. 16AP-204, 2017-Ohio-1123, ¶ 5. (May 21, 2018 Order of the Magistrate at 9.)

[2] The Estate's administrator, Gregory Utter, lodged the complaint.

after his December 2016-January 2017 post-release control violations; (2) utilize GPS data from Golsby's monitor until after Ms. Tokes' death; (3) establish monitored exclusion zones for Golsby; and (4) place him in a more secure facility than the EXIT Program. (Compl. at ¶ 54.) The Estate seeks compensatory damages and other just and proper relief. (Compl. at ¶ 64-65.)

{¶ 8} In response, DRC moved to dismiss under Civ.R. 12(B)(6). Therein, DRC maintained public duty immunity, found in R.C. 2743.01 and 2743.02, blocked the suit because its supervising and monitoring of Golsby equated to the performance or non-performance of a public duty. DRC also argued it was not liable under general tort law principles.

{¶ 9} The Estate first countered that DRC, through its monitoring of Golsby, knew or should have known of Golsby's violent propensities such that DRC had a duty to protect Ms. Tokes. The Estate next retorted that Golsby was on furlough under R.C. 2967.26, rather than on post-release control under R.C. 2967.28, at the time he raped and murdered Ms. Tokes such that DRC's claimed immunity was inapplicable. In addition, the Estate responded by asserting that DRC's cited immunity statutes, R.C. 2743.01 and 2743.02, were unconstitutional.

{¶ 10} DRC replied that there was no statutory duty to confine Golsby after he served his prison sentence. As such, DRC reasoned, it did not owe Ms. Tokes a duty. Next, DRC posited that the public duty rule is constitutional under the specific words of the Ohio Constitution, Article I, Section 16 ("Section 16").

{¶ 11} The Court of Claims granted DRC's motion to dismiss on September 4, 2018. The Court of Claims initially declined to engage in the constitutional analysis. Instead, the Court of Claims reasoned that because the Estate failed to plead sufficient facts to show that a special relationship existed between DRC and Ms. Tokes, public duty immunity applied to bar the Estate's claims. The Court of Claims also found DRC's counterargument that Golsby was a releasee and not a furloughee on the day he raped and murdered Ms. Tokes persuasive. Consequently, the Court of Claims concluded that the Estate could prove no set of facts entitling it to relief such that Civ.R. 12(B)(6) mandated dismissal. This appeal followed.

## II. STANDARD OF REVIEW

{¶ 12} We employ a de novo standard of review when reviewing a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Ettayem v. Land of Ararat Invest. Group, Inc.*, 10th Dist. No. 17AP-93, 2017-Ohio-8835, ¶ 19-20, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. Such a motion is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992), citing *Assn. for the Defense of the Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117 (1989). When addressing a Civ.R. 12(B)(6) motion, the trial court must presume all factual allegations contained in the complaint are true and must make all reasonable inferences in favor of the non-moving party. *Jones v. Greyhound Lines, Inc.*, 10th Dist. No. 11AP-518, 2012-Ohio-4409, ¶ 31, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). The court need not, however, accept as true any unsupported and conclusory legal propositions advanced in the complaint. *Morrow v. Reminger & Reminger Co. LPA.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 7 (10th Dist.). Additionally, a trial court may not rely on allegations or evidence outside the complaint when reviewing a Civ.R. 12(B)(6) motion. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997). But, "as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991).

## III. ASSIGNMENT OF ERROR

{¶ 13} The Estate's single assignment asserts:

> The Court Of Claims Erred In Granting [DRC's] Motion To Dismiss Under Rule 12 Where Plaintiff Met Its Pleading Burden To Articulate A Claim Of Negligence That Was Not Subject To State Sovereign Immunity Under Applicable Statutes And Constitutional Provisions.

We address the issues the assignment presents out of order to yield a cohesive analysis.

## IV. R.C. 2743.01(E)(1) and 2743.02(A)(3) DO NOT VIOLATE SECTION 16

### A. Constitutional and Statutory Framework

{¶ 14} Section 16, R.C. 2743.01(E)(1) and 2743.02(A)(3) are all of material import to our analysis. Accordingly, we begin with a review of the language each provides.

{¶ 15} Section 16 states:

> All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.
>
> [Suits against the state.] Suits may be brought against the state, in such courts and in such manner, as may be provided by law.

{¶ 16} R.C. 2743.02(A) is best addressed in parts. R.C. 2743.02(A)(1) provides:

> The state hereby waives its immunity from liability * * *, and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter * * *.

Simply put, this section serves to waive governmental immunity under certain conditions. In turn, R.C. 2743.02(A)(3)(a) establishes that the state's performance or non-performance of a public duty relative to individuals in prison is not one of those circumstances.

{¶ 17} So, the question thus becomes what constitutes a public duty within the confines of the statute. R.C. 2743.01(E)(1)(a) provides the answer:

> "Public duty" includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following:
>
> (a) Permitting, certifying, licensing, inspecting, investigating, supervising, regulating, auditing, monitoring, law enforcement, or emergency response activity[.]

Hence, R.C. 2743.02(A)(3)(a) and 2743.01(E)(1) combine to immunize the state for the performance or nonperformance of public duties. This is known as the "public duty doctrine." *Vos v. Ohio EPA*, 10th Dist. No. 17AP-749, 2018-Ohio-2956, ¶ 12.

{¶ 18} When the public duty doctrine is at issue, R.C. 2743.02(A)(3)(b) serves to specify a situation referenced in R.C. 2743.02(A)(1) in which governmental liability is waived—that is, where a special relationship exists. R.C. 2743.02(A)(3)(b) further delineates what is required to prove that type of relation. Specifically, it directs:

> (b) The state immunity provided in division (A)(3)(a) of this section does *not* apply to any action of the state under circumstances in which a special relationship can be

established between the state and an injured party. A special relationship under this division is demonstrated if *all* of the following elements exist:

(i) An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;

(ii) Knowledge on the part of the state's agents that inaction of the state could lead to harm;

(iii) Some form of direct contact between the state's agents and the injured party;

(iv) The injured party's justifiable reliance on the state's affirmative undertaking.

(Emphasis added.) In keeping with this waiver, R.C. 2743.01(E)(2) defines public duty to exclude circumstances wherein special relationships exist between the state and an injured party.

{¶ 19} To summarize, the cited statutory sections combine to provide the state with immunity from claims involving the alleged performance and non-performance of public duties in the absence of a special relationship between the state and the victim.

### B. Constitutional Analysis

{¶ 20} We noted above that the Court of Claims refrained from considering the Estate's constitutional argument due to lack of jurisdiction. This was proper because constitutional claims are not actionable in the Court of Claims. *White v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-927, 2013-Ohio-4208, ¶ 17. But because we have jurisdiction over constitutional questions via our status under the Ohio Constitution as an Article III, Section 4 court, and because our constitutional determination may prove dispositive, we consider this issue first.

{¶ 21} Initially, DRC asserts it is immune from the Estate's suit under the public duty doctrine. The doctrine applies to the DRC. *See Hurst v. State Dept. of Rehab.,* 72 Ohio St.3d 325 (1995) (partially overruled in *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, but relevantly reinstated by the enactment of R.C. 2743.02(A)(3) and 2743.01(E)(1)).

{¶ 22} The Estate concedes the public duty doctrine purports to provide governmental immunity in situations akin to the one sub judice. Instead, it disputes

whether the sections upon which the doctrine is based are constitutional under Section 16 as amended in 1912. To reiterate, Section 16 pertinently provides "[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law." The Estate argues Section 16's highlighted language, when read in conjunction with the transcript of Ohio's 1912 Constitutional Convention, establishes the public's right to sue DRC remains intact such that the public duty rule is unconstitutional.

{¶ 23} In support, the Estate cites to Justice Pfeiffer's concurrence in *Garrett v. Sandusky*, 68 Ohio St.3d 139, 142 (1994). Therein, the court determined that R.C. Chapter 2744 governmental immunity exempting "political subdivisions from liability for losses resulting from the exercise of 'governmental' functions" did not apply to block a wrongful death suit filed by a father on behalf of his deceased son who drowned in a city run wave pool. *Id.* at 140, 142. The court so held because the city's operation of the wave pool did not equate to an immunized governmental function.

{¶ 24} Concurring singularly, Justice Pfeiffer stated he would hold that R.C. Chapter 2744 was unconstitutional in violation of Section 16. He turned to the constitutional convention's proceedings and debates to support his view. In particular, he wrote Section 16 "was originally intended to abolish the doctrine of sovereign immunity on its own" because the amendment's sole sponsor "repeatedly indicated that the provision, once adopted, would end sovereign immunity." *Id.* at 142. Additionally, Justice Pfeiffer referred to a question that arose after the amendment was read to the delegates. *Id.* at 143. The question was whether the amendment itself imparted the right to sue the government or if legislation was necessary to so grant. *Id.* Justice Pfeiffer noted the response was the former. *Id.* Thus, he reasoned, legislative action was unnecessary to end governmental immunity. *Id.* at 143. He continued:

> The actual wording of the amendment expresses the intent of the delegates who enacted it. The General Assembly is responsible for determining the appropriate "courts" in which suits against the state are to be filed, and it must design the "manner," or procedures, for plaintiffs to follow in these courts. Nowhere in the provision does it say that the General Assembly shall determine what causes of action can be brought against the state. Thus, the true intent of the amendment to Section 16, Article I was to abolish sovereign immunity in its entirety.
>
> This true meaning has been ignored by Ohio case law, but should be acknowledged today. Governmental immunity,

including municipal immunity, is contrary to the clear meaning
and mandate of the Ohio Constitution.

*Id.* at 144. From this, the Estate concludes that Section 16 itself establishes a right to sue the state such that the public duty doctrine created under R.C. 2743.02(A) and 2743.01(E) is unconstitutional. Hence, the Estate proffers the trial court improperly granted DRC's motion to dismiss on immunity grounds under those statutes.

{¶ 25} We find the Estate's reliance on Justice Pfeiffer's *Garrett* concurrence does nothing to support its argument in this regard. First, Justice Pfeiffer signed the concurrence alone. Second, and perhaps most importantly, Justice Pfeiffer subsequently recognized that his position on the issue was a "losing battle." *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 47 (Pfeiffer, J., dissenting).

{¶ 26} Instead, we find DRC's arguments contra more persuasive. DRC rebuts the Estate's theory on multiple fronts. First, DRC relies on Section 16's plain language providing that "[s]uits may be brought against the state, in such courts and in such manner, *as may be provided by law*" to establish that the section is not self-executing. (Emphasis added.) Specifically, DRC asserts the highlighted wording clearly empowers the legislative branch of government with discretion to take affirmative action imparting the authority to sue the state. DRC continues that such action is required before such claims may be brought. To buttress this contention, DRC directs our attention to two cases holding that Section 16 is not self-executing. Those include *Raudabaugh v. State*, 96 Ohio St. 513, 514 (1917) and *Krause, Admr., v. State*, 31 Ohio St.2d 132, 143 (1972). We have previously concisely summarized those holdings as follows:

> "It is a fundamental principle of law that the state, as a sovereign, is not liable to be sued in its own courts without its express consent." *Raudabaugh v. State* (1917), 96 Ohio St. 513, 514. In *Raudabaugh* * * * the Supreme Court of Ohio, in addressing Section 16, Article I, Ohio Constitution, held that this section "* * * is not self-executing, and that legislative authority by statute is required as a requisite to the bringing of an action against the state * * *." In *Krause, Admr., v. State* (1972), 31 Ohio St. 2d 132, 143, the court noted that in order to safeguard against problems associated with claims against the state "* * * the delegates drafted Section 16 of Article I to empower the General Assembly to denominate in what courts and in what manner suits may be brought against the state."

*Drexel v. Columbus Technical Inst.*, 10th Dist. No. 88AP-271, 1990 Ohio App. LEXIS 85 at *6-7 (Jan. 18, 1990). *Raudabaugh* and *Krause* therefore direct that the 1912 Amendment to Section 16 serves only to authorize the legislature to impose liability under circumstances the legislature deems fit to do so and not to waive liability entirely.

{¶ 27} Given the clear pronouncement set forth in *Raudabaugh* and *Krause* that the section is not self-executing, the Estate argues *Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31 (1981) overturned *Krause*. However, *Schenkolewski* simply held courts, not just the legislature, maintain constitutional authority to "modify or abrogate common law doctrines of governmental or sovereign immunity." *Schenkolewski* at 36. *Schenkolewski* thus diverged from *Krause* only to the extent *Krause* held it was within the legislature's exclusive province to modify common law governmental immunity. It is worth noting that in reaching that determination the court cited *Raudabaugh's* and *Krause's* joint holding that Section 16 is not self-authenticating with approval. *Schenkolewski* at 35. As such, we find the Estate's reliance on *Schenkolewski* is misplaced.

{¶ 28} The Estate's final contention regarding the unconstitutionality of R.C. 2743.02(A)(3)(a) and 2743.01(E)(1)(a) is that the Supreme Court of Ohio, in *Krause*, "misread the constitutional history" when holding that Section 16 is not self-executing. (Appellant's Reply Brief at 16.) But mere disagreement with a court's determination, without more, is insufficient to negate the precedential value of the holdings that guide us here.

{¶ 29} Accordingly, we hold Section 16 is not self-executing under its own plain language, *Raudabaugh* and *Krause*. *See also Coleman v. Columbus State Community College*, 10th Dist. No. 15AP-119, 2015-Ohio-4685, ¶ 11 (holding Section 16 is not self-executing). R.C. 2743.02(A)(3)(a) and 2743.01(E)(1)(a) are constitutional. We therefore find the Estate's argument on this issue unpersuasive and overrule this portion of the assigned error.

{¶ 30} Having determined that the public duty doctrine is constitutional, we next focus on whether R.C. 2743.02(A)(3)(a) and 2743.01(E)(1)(a) operate to impose immunity in this instance.

**C.** **The Court of Claims Correctly Applied the Public Duty Doctrine to Dismiss the Action.**

{¶ 31} The Estate alleges that the Court of Claims erred by concluding DRC owed no duty such that DRC was not liable for Golsby's criminal actions. DRC retorts that the Court of Claims correctly found no duty present under any theory of recovery so we should uphold the Court of Claims' dismissal. After due consideration, we determine DRC's argument carries more weight in this instance.

{¶ 32} We return to the confines of the complaint for this portion of the analysis. At its core, the complaint sounds in negligence. The Estate therefore has the burden of sufficiently pleading a duty, a breach of that duty and an injury resulting from the breach to sustain its wrongful death and survivorship claims. *Schnetz v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 207, 2011-Ohio-3927, ¶ 20 (10th Dist.). The parties' arguments center on the duty element; we therefore limit our focus to that aspect of the negligence requirements as our examination proves conclusive on this point.

{¶ 33} " 'Legal duty' has been defined as an obligation imposed by law on one person to act for the benefit of another person due to a relationship between them." *Power v. Boles*, 110 Ohio App.3d 29, 33 (10th Dist.1996). "If the defendant owed the plaintiff no duty of care, there can be no action for negligence." *Bungard v. Dept. of Job & Family Servs.*, 10th Dist. No. 07AP-447, 2007-Ohio-6280, ¶ 19. Whether a duty exists is a question of law for the court to determine. *Id.*

{¶ 34} Herein, the Estate proffers three theories as to how or why DRC owed Ms. Tokes a duty. First, the Estate asserts DRC had a special relationship with her that prevents the application of the public duty doctrine. Second, the Estate argues DRC had a statutory duty to her under R.C. 2967.26 by virtue of Golsby's "furloughee" status. Lastly, the Estate posits DRC had a duty under common law. DRC replies that because its actions constituted duties only toward the general public, and because it lacked the ability to control Golsby after his release from prison, no special relationship existed to prevent the Court of Claims from applying the public duty doctrine. DRC also retorts R.C. 2967.26 is irrelevant. DRC then argues common law duties are not applicable. Each contention and response will be addressed in turn.

### 1. The Special Relationship Exception does not Apply.

{¶ 35} To begin, the Estate concedes DRC's alleged negligent performance or non-performance of supervising and monitoring Golsby while he was on post-release control falls within the confines of the definition of public duty under R.C. 2743.01(E)(1)(a). As such, the public duty doctrine is implicated.

{¶ 36} The rule "is used to determine the first element of negligence, the existence of a duty on the part of the state. If the duty owed is general in nature, the wrong created by its breach is to the public in general and, therefore, not individually actionable." (Citation omitted.) *Hurst* at 329.[3] As noted above, the public duty doctrine insulates DRC from liability for the performance and non-performance of public duties in the absence of a special relationship. *See Banks v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 17AP-748, 2018-Ohio-5246, ¶ 14. Accordingly, the Estate must sufficiently plead the existence of a special relationship to avoid imposition of the public duty doctrine and Civ.R. 12(B)(6) dismissal. *See Rudd v. Ohio State Hwy. Patrol*, 10th Dist. No. 15AP-869, 2016-Ohio-8263, ¶ 14-18 (noting absence of special relationship factors in the complaint to affirm dismissal); *see also Rooney v. Ohio State Hwy. Patrol*, 10th Dist. No. 16AP-204, 2017-Ohio-1123, ¶ 21-22 (same).

{¶ 37} To satisfy that responsibility, the Estate must allege adequate facts establishing each of the following elements: (1) DRC assumed, by means of promises or actions, an affirmative duty to act on behalf of Ms. Tokes as the injured party; (2) DRC had knowledge through its agents that inaction could produce harm; (3) DRC's agents had direct contact with Ms. Tokes; and (4) Ms. Tokes justifiably relied on DRC's affirmative undertaking. R.C. 2743.02(A)(3)(b).

{¶ 38} As the Court of Claims correctly concludes, the Estate fails to sustain its burden in this regard. Indeed, the complaint does not allege that DRC and Ms. Tokes had a special relationship. As such, the complaint makes no mention of DRC's affirmative duty to act on behalf of Ms. Tokes. The Estate resultantly fails to address the justifiable reliance element. Additionally, the Estate does not allege DRC and Ms. Tokes had any direct

---

[3] To reiterate, the enactment of R.C. 2743.02(A)(3) and 2743.01(E)(1) reinstated the portion of *Hurst's* holding relied on here.

contact.  Each of these failures, alone, warrant dismissal.  *See Rudd* at ¶ 14; *see also Rooney* at ¶ 19-22.

{¶ 39}  Thus, because the Estate concedes DRC's supervising or monitoring Golsby was a public duty, and because we determine that the complaint fails to plead sufficient facts to establish a special relationship existed between DRC and Ms. Tokes under R.C. 2743.02(A)(3)(b), *Rudd* and *Rooney,* we affirm the Court of Claims' application of the public duty rule to dismiss the Estate's complaint in this instance.

### 2. Negligence per se is not Available Because R.C. 2967.26 is Inapplicable.

{¶ 40}  We now turn our attention to the Estate's argument that the public duty doctrine is inapplicable because the Estate is proceeding under R.C. 2967.26, the furlough statute.[4] (Appellant's Brief at 21.)  Specifically, the Estate maintains Golsby was furloughed from prison pursuant to R.C. 2967.26 when he raped and murdered Ms. Tokes. R.C. 2967.26(B) provides that a:

> prisoner transferred to transitional control under this section *shall* be confined * * * during any period of time that the prisoner is not actually working at the prisoner's approved employment, engaged in a vocational training or another educational program, engaged in another program designated by the director, or engaged in other activities approved by the department.

(Emphasis added.)  The Estate thus argues DRC had a statutory duty to secure and confine Golsby between curfew hours and DRC's failure to do so resulted in Golsby's raping and murdering Ms. Tokes.  Accordingly, the Estate posits DRC's alleged omission constitutes negligence per se under R.C. 2967.26 which prohibits the imposition of public duty immunity here.

{¶ 41}  On this point, the Estate relies on *Reynolds v. State, Div. of Parole & Community Servs.*, 14 Ohio St.3d 68 (1984). The primary *Reynolds* plaintiff was raped by a prisoner while the prisoner was on a work-release furlough under R.C. 2967.26.  *Reynolds* at paragraph two of the syllabus.  The Court of Claims' dismissal of the resultant case for lack of duty was subsequently affirmed by this court.  *Reynolds v. Div. of Parol[e] &*

---

[4] We cite to the version in use at the time of Golsby's sentencing, but the language remains the same in the version effective on March 22, 2019.

*Community Servs.*, 10th Dist. No. 83AP-348, 1983 Ohio App. LEXIS 15027 at *4 (Oct. 27, 1983). The Supreme Court of Ohio reversed, holding R.C. 2967.26 statutorily imposed a duty on DRC to confine prisoners during non-working periods. *Reynolds*, 14 Ohio St.3d at 69. The *Reynolds* court further directed:

> Once a decision has been made to furlough a prisoner pursuant to R.C. 2967.26, a cause of action can be maintained against the state for personal injuries proximately caused by the failure to confine the prisoner during non-working hours in accordance with R.C. 2967.26(B). Such a failure to confine is negligence per se, and is actionable pursuant to R.C. 2743.02.[5]

*Id.* at paragraph two of the syllabus. In sum, *Reynolds* held the state could face liability charges when a furloughed prisoner personally injured another individual because R.C. 2967.26 imposes an affirmative, mandatory duty on the state via DRC to confine prisoners when not furloughed.

{¶ 42} From this, the Estate declares DRC's placing an ankle monitor on Golsby and imposing curfew on him is sufficiently akin to Golsby being on furlough such that DRC had a duty under R.C. 2967.26 to confine him. (Appellant's Brief at 23.) We, like the Court of Claims, do not agree with the Estate's citation to R.C. 2967.26 to establish the presence of a duty. This is because the complaint specifically alleges that Golsby was on post-release control at the time he raped and murdered Ms. Tokes. (Compl. at ¶ 11.) Indeed, the Estate admits that Golsby's post-release control began in November 2016 under R.C. 2967.28. (Appellant's Brief at 22; *see also* Compl. at ¶ 11.) The complaint does not refer to R.C. 2967.26. Furthermore, we are not aware of the Estate lodging a motion to amend its complaint. Hence, because our review is limited to allegations inside the complaint, the Estate's R.C. 2967.26 furlough contention is not properly before us. *State ex rel. Fuqua*, 79 Ohio St.3d at 207.

{¶ 43} Even if we could properly examine the Estate's furlough argument, we would still hold that *Reynolds* is inapposite and no duty is present here pursuant to R.C. 2967.26 for two reasons. *Hurst* aptly summarizes the first as follows: "[P]arole and furlough are very different in their purpose. * * * The [parole] statutes at issue herein do not establish specific affirmative duties to any person. Rather, they prescribe a general procedure for

---

[5] This section, as noted above, addresses the state's waiver of immunity.

granting parole from prison and reporting violators of parole." *Hurst* at 329 (referring to R.C. 2967.26 and 5149.04, the latter of which establishes the Ohio Adult Parole Authority, an administrative unit of DRC, has jurisdiction over persons paroled or released to community supervision); (*see also* Compl. at ¶ 9.)  For certain, R.C. 2967.28 primarily serves to establish the mandatory length of post-release control for felonies.[6]  The Estate points us to no language within that section establishing a requisite duty on the part of DRC.

{¶ 44} Secondly, because Golsby was on post-release control on the day he raped and murdered Ms. Tokes, the Court of Claims correctly noted that Golsby was a "releasee" under R.C. 2967.01(J). (Sept. 8, 2017 Decision at 12.)  That section defines "releasee" to mean "an inmate who has been *released from confinement* pursuant to section 2967.28 of the Revised Code under a period of post-release control that includes one or more post-

---

[6] R.C. 2967.28(B) provides:

> Each sentence to a prison term, other than a term of life imprisonment, for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third 1 degree that is an offense of violence and is not a felony sex offense shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. This division applies with respect to all prison terms of a type described in this division, including a term of any such type that is a risk reduction sentence. If a court imposes a sentence including a prison term of a type described in this division on or after July 11, 2006, the failure of a sentencing court to notify the offender pursuant to division (B)(2)(d) of section 2929.19 of the Revised Code of this requirement or to include in the judgment of conviction entered on the journal a statement that the offender's sentence includes this requirement does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender under this division. This division applies with respect to all prison terms of a type described in this division, including a non-life felony indefinite prison term. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in this division and failed to notify the offender pursuant to division (B)(2)(d) of section 2929.19 of the Revised Code regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence pursuant to division (D)(1) of section 2929.14 of the Revised Code a statement regarding post-release control. Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender shall be of one of the following periods:
> (1) For a felony of the first degree or for a felony sex offense, five years;
> (2) For a felony of the second degree that is not a felony sex offense, three years;
> (3) For a felony of the third degree that is an offense of violence and is not a felony sex offense, three years.

release control sanctions." (Emphasis added.)  Thus, as a releasee, Golsby was no longer subject to confinement by DRC.  But R.C. 2967.26 only applies to furloughees still in confinement. Consequently, R.C. 2967.26 is irrelevant and the Estate's attempt to assert the existence of a duty under R.C. 2967.26 and *Reynolds* fails. We therefore affirm the Court of Claims' determination on this point and overrule this portion of the assignment of error.

### 3.  Common Law Duty

{¶ 45} Lastly, the Estate turns to Sections 314 and 315 of the 2 Restatement of the Law 2d, Torts at 122 (1965) and to *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284 (1997), to argue DRC owes a common law duty to control Golsby's conduct.[7]  (*See* Appellant's Brief at 15.)

{¶ 46} Our analysis on this score is quick. Having held above that public duty immunity applies, even if a common law duty under Sections 314, 315 or *Morgan* exists, the public duty rule would still operate to insulate DRC from liability because the Estate failed to adequately plead the elements of a special relationship.  Consequently, we conclude that the Estate fails to establish DRC could be held liable for Golsby's actions under Sections 314, 315 or *Morgan* and we overrule this portion of the assignment of error.

## V.  CONCLUSION

{¶ 47} For the foregoing reasons, we affirm the decision of the Court of Claims dismissing the case under Civ.R. 12(B)(6) and overrule the single assignment of error.

*Judgment affirmed.*

KLATT, P.J., and SADLER, J., concur.

---

[7] 2 Restatement of the Law 2d, Torts, Section 314 states the general rule that there is no duty to act affirmatively for another's aid or protection. Restatement Section 315 "is a special application of the general rule stated in § 314." 2 Restatement of the Law 2d, Torts, Section 315, Comment a (1965). Restatement Section 315 provides that there:

> is no duty so to control the conduct of a third person as to prevent him from
> causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which
> imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to
> the other a right to protection.

The Supreme Court of Ohio adopted Sections 314 and 315 in *Gelbman v. Second Natl. Bank*, 9 Ohio St.3d 77, 79 (1984).