[Cite as *Prime Invests., L.L.C., v. Altimate Care, L.L.C.*, 2022-Ohio-1181.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| Prime Investments, LLC, | : | |
| Plaintiff-Appellant, | : | No. 20AP-526 |
| | | (C.P.C. No. 19CV-1543) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Altimate Care, LLC et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N
Rendered on April 7, 2022

**On brief:** *Cooper & Elliot, LLC, Barton R. Keyes*, and *Adam P. Richards* for appellant. **Argued:** *Barton R. Keyes*.

**On brief:** *The Saks Law Office, LLC,* and *Jeffrey Saks*, for appellee. **Argued:** *Richard Schoenstein*.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Plaintiff-appellant, Prime Investments, LLC ("Prime"), appeals from a judgment of the Franklin County Court of Common Pleas, dismissing Prime's complaint against defendants-appellees, Irene Mendyuk, Ninell Mendyuk, and Altimate Care LLC ("Altimate"), for failure to state a claim upon which relief may be granted. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In June 2015, appellee, Irene Mendyuk, an Officer and Shareholder in Altimate, contacted Prime, a Maryland Limited Liability Company, to discuss retaining Prime to help sell Altimate. (Apr. 17, 2019 First Am. Compl. at 2.) Over much of the next year, Prime worked with appellees to obtain financial information needed for Prime's

valuation. *Id.* Appellees executed a Broker Agreement with Prime on behalf of Altimate dated June 9, 2016. *Id.*

{¶ 3} The Broker Agreement provides in relevant part as follows:

> In the event that the Business is sold, exchanged, leased or otherwise disposed of within twenty-four months after the Selling Period or any extension thereof to any person, firm or other entity whom Seller or Broker or any agent of Seller or Broker, during the Selling Period or any extension thereof, obtained a signed Non-Disclosure Agreement, Seller shall immediately pay Broker's commission as set forth herein, as if such sale, exchange, lease or other disposition occurred during the Selling Period.

(First Am. Compl., Ex. A at 2.)

{¶ 4} In November 2016, Prime and the appellees agreed to extend the term of the Broker Agreement through November 28, 2017. (First Am. Compl. at 2) Within the Selling Period as extended, Prime obtained a signed non-disclosure agreement from and on behalf of non-party Michael Pollak and any potential investors, equity partners, and agents. (First Am. Compl. at 3.)

{¶ 5} Effective June 22, 2018, appellees executed a Membership Purchase Agreement with one of Pollak's potential investors or equity partners. *Id.* In that Membership Purchase Agreement, appellees represented and warranted that they had engaged Prime as their broker in connection with the agreement. *Id.* According to the complaint, "[i]n early December, the closing of the sale appeared imminent." *Id.* at 4. Thereafter, Prime emailed a commission statement to the buyer's counsel (with figures based on information then known to Prime), with a copy to defendants' counsel. The complaint alleges that "Ninell Mendyuk denied that defendants had signed a 7% commission agreement," and informed Prime "the deal was off." *Id.*

{¶ 6} The complaint provides that in January 2019, a potential investor or equity partner of Pollak purchased Altimate for $13 million, but appellees refused to pay Prime. The complaint does not identify the purchaser by name.

{¶ 7} On February 20, 2019, Prime filed its complaint against appellees alleging claims for breach of contract and unjust enrichment. Appellees filed a motion to dismiss the complaint, pursuant to Civ.R. 12(B)(6), on April 9, 2019. Prime, however, amended the

complaint on April 17, 2019 to add a claim for promissory estoppel. Prime's amended complaint expressly incorporated the allegations in the original complaint and attached contract documents thereto.

{¶ 8} On May 1, 2019, appellees filed a motion to dismiss the amended complaint, pursuant to Civ.R. 12(B)(5) and 12(B)(6), alleging insufficiency of service of process and failure to state a claim upon which relief may be granted. On October 23, 2020, the trial issued a decision and judgment entry dismissing Prime's amended complaint for failure to state a claim for relief. In dismissing in breach of contract claim, the trial court concluded:

> Prime's Amended Complaint merely asserts that Prime obtained a signed NDA [Non-disclosure agreement] from Pollak on October 26, 2017, just one month before the expiration of the Selling Period. Furthermore, Prime's Amended Complaint never identifies the actual buyer of Altimate's business. The Court agrees with Altimate that such omission from Prime's Amended Complaint demonstrates that Defendants did not procure the actual buyer of Altimate. Rather, as Altimate suggests in its Reply, what appears to have happened here is that Pollak assumed the role of broker. Prime introduced Altimate to Pollak, and Pollak ultimately secured a buyer ready, willing, and able to purchase Defendants' business-Pollak's "potential investors" and/or "potential equity partners." Accordingly, the Court declines to allow Prime's claim that it procured a buyer during the Selling Period to proceed because the Amended Complaint fails to sufficiently state such claim to survive Defendants' Civ.R. 12(B)(6) Motion to Dismiss.

(Oct. 23, 2020 Decision & Entry at 26-27.)

{¶ 9} The trial court also dismissed Prime's equitable claims sounding in unjust enrichment and promissory estoppel for failure to state a claim upon which relief may be granted. Prime timely appealed to this court from the October 23, 2020 judgment.

## II. ASSIGNMENT OF ERROR

{¶ 10} Appellant assigns the following as trial court error:

> The trial court erred in granting appellees' motion to dismiss for failure to state a claim.

## III. STANDARD OF REVIEW

{¶ 11} Civ.R. 12(B)(6) permits a defendant to move the trial court for dismissal of a complaint for failure to state a claim upon which relief can be granted. A Civ.R. 12(B)(6) motion to dismiss is a procedural device that tests the sufficiency of the complaint. *O'Brien v. Univ. Community Tenants Union, Inc.,* 42 Ohio St.2d 242 (1975). In ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6), the court "must construe the complaint in the light most favorable to the plaintiff, presume all factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff." *Henton v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 16AP-768, 2017-Ohio-2630, ¶ 7, citing *Coleman v. Columbus State Community College,* 10th Dist. No. 15AP-119, 2015-Ohio-4685, ¶ 6, citing *Mitchell v. Lawson Milk Co.,* 40 Ohio St.3d 190, 192 (1988). The dismissal of a complaint for failure to state a claim is proper when it appears, beyond doubt, that the plaintiff can prove no set of facts entitling him to relief. *Hostacky v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 21AP-349, 2021-Ohio-4464, ¶ 4. " '[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.' " *Estate of Tokes v. Dept. of Rehab. & Corr.,* 10th Dist. No. 18AP-723, 2019-Ohio-1794, ¶ 12, quoting *York v. Ohio State Hwy. Patrol,* 60 Ohio St.3d 143, 145 (1991).

{¶ 12} When reviewing a decision on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, this court's standard of review is de novo. *Foreman v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 14AP-15, 2014-Ohio-2793, ¶ 9.

## IV. LEGAL ANALYSIS

### A. Assignment of Error

#### 1. Breach of Contract

{¶ 13} "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.,* 152 Ohio St.3d 453, 2018-Ohio-5, ¶ 41, citing *Natl. City Bank of Cleveland v. Erskine & Sons,* 158 Ohio St. 450 (1953), paragraph one of the syllabus, *Tidewater Fin. Co. v. Cowns,* 197 Ohio App.3d 548, 2011-Ohio-6720, ¶ 12 (1st Dist.), *Carpenter v. Long,* 196 Ohio App.3d 376, 2011-Ohio-5414, ¶ 220 (2d Dist.), *Jarupan v. Hanna,* 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.).

{¶ 14} If a contract is not ambiguous, it must be enforced as written. *KeyBank Natl. Assn. v. Columbus Campus, LLC*, 10th Dist. No. 11AP-920, 2013-Ohio-1243, ¶ 27. The purpose of contract construction is to discover and effectuate the intent of the parties. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311 (1996), citing *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. The intent of the parties is presumed to reside in the language they chose to use in their agreement. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. If the terms are clear and unambiguous, courts cannot create a new agreement by finding an intent not expressed in the clear language employed by the parties. *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638 (1992), syllabus.

{¶ 15} For its breach of contract claim, Prime's amended complaint asserts the following alternative theories of recovery:

> Prime earned a commission under the Broker Agreement, including because Prime procured a buyer ready, willing, and able to buy defendants' business within the defined Selling Period as extended, *and because within 24 months after the Selling Period as extended, defendants' business was sold to a person, firm, or entity from whom Prime obtained a signed nondisclosure agreement within the Selling Period as extended.*

(Emphasis added.) (First Am. Compl. at 6.)

{¶ 16} There is no dispute that Prime had the exclusive right to sell Altimate during the term of the Broker Agreement. It is also understood by the parties that every prospective buyer was required to sign a Non-Disclosure Agreement ("NDA"). The Broker Agreement contains the following provisions regarding Prime's commission:

> [1]. Seller agrees that if during the Selling Period or any extension thereof (1) Broker procures a Buyer ready, willing and able to buy the Business * * * with the terms hereof *or* (2) any agreement by any party is made for the sale * * * of the Business, * * * Broker shall immediately become entitled to a commission equal to the greater of $50,000 ($50,000 is the "Minimum Commission") or 7% of the Total Price. [1]

---

[1] Under the Broker Agreement " 'Total Price' as used herein includes cash and all other consideration furnished by the Buyer including, without limitation, the purchase price of the assets (including Collateral Agreements), any obligations assumed by the Buyer and the purchase price of corporate stock plus liabilities of the corporation being sold." (First Am. Compl., Ex. A at 2.)

[2.] In the event that the Business is sold * * * within twenty-four months after the Selling Period or any extension thereof to any person, firm or other entity whom Seller or Broker or any agent of Seller or Broker, during the Selling Period or any extension thereof, obtained a signed Non-Disclosure Agreement, Seller shall immediately pay Broker's commission as set forth herein, as if such sale * * * occurred during the Selling Period.

(Emphasis added.)  (First Am. Compl., Ex. A at 2.)[2]

{¶ 17} In our view, the intent of the parties is clear from the plain language of the Broker Agreement, as the enumerated Sections of Paragraph 1 are disjunctive.  Prime earns a Minimum Commission under Paragraph 1 Section (1), if no sale occurs within the Selling Period, but Prime procured a ready, willing, and able buyer with the Selling Period.[3]  Prime earns a commission under Paragraph 1 Section (2), if a sales agreement is executed by any person within the Selling Period and the sale closes within the Selling Period or within 24 months thereafter.[4]  Prime earns a commission under Paragraph 2, if Altimate is sold to a person, firm, or entity, in the 24-month period immediately following the Selling Period, provided the buyer signed and NDA within the Selling Period.

{¶ 18} The amended complaint alleges that the parties executed the Broker Agreement on June 9, 2016, with an initial Selling Period of June 9, 2016, through June 8, 2017.  In November 2016, the parties agreed to extend the Broker Agreement and the Selling Period to November 28, 2017.  The amended complaint further alleges that Prime obtained a signed NDA from Pollak and any potential investors, equity partners, and agents within the Selling Period.  According to the amended complaint, a potential investor, equity partner, or agent of Pollak purchased Altimate for $13 million in January 2019, which is within the 24-month period immediately following the Selling Period.  Finally, the amended complaint alleges appellees refused to pay a commission to Prime.

{¶ 19} Based on the allegations in the amended complaint, Prime's right to recovery in this case, if any, arises under Paragraph 2 of the Broker Agreement because the sale occurred outside the Selling Period, but within the 24-month period immediately following

---

[2] The paragraphs in the Broker Agreement are not numbered. For ease of discussion, we have numbered the two relevant paragraphs. The numbers (1), and (2) within Paragraph 1 are original.

[3] Because the initial Selling Period was extended to November 28, 2017, the term "Selling Period" refers to the two-year period between November 28, 2015, and November  28, 2017.

[4] Because Altimate was sold, the provisions pertaining to exchanges, leases, and asset transfers are irrelevant.

the Selling Period. Paragraph 1 Section (1) does not apply to the transaction because a sale occurred. Paragraph 1 Section (2) does not apply because no agreement for the sale of Altimate was made within the Selling Period.

{¶ 20} When the factual allegations in the amended complaint are construed in Prime's favor, and we draw all reasonable inferences therefrom, Prime's amended complaint alleges that Pollak, or an entity associated with Pollak, signed an NDA within the Selling Period and Pollak, or an entity associated with Pollak, purchased Altimate in the 24-month period immediately following the Selling Period. (First Am. Compl. at 3 and 5.) If proven true, these facts obligated appellees, under Paragraph two of the Broker Agreement, to immediately pay Prime a commission equal to seven percent of the total price. There is no dispute that appellees refused to pay Prime. Thus, Prime's amended complaint states a claim for relief against appellees for a breach of the Broker Agreement.

{¶ 21} The trial court determined Prime's amended complaint failed to state a claim for breach of the Broker Agreement because Prime's amended complaint does not identify the buyer with greater particularity. We do not believe that Ohio law required Prime to plead the claim so precisely.

{¶ 22} Civ.R. 8(A) requires "[a] pleading that sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Pursuant to Civ.R. 8(A) "the complaint must 'concisely set forth * * * those operative facts sufficient to give "fair notice of the nature of the action." ' " *Morrissette v. DFS Servs., LLC*, 10th Dist. No. 10AP-633, 2011-Ohio-2369, ¶ 15, quoting *Johnson v. Ferguson-Ramos*, 10th Dist. No. 04AP-1180, 2005-Ohio-3280, ¶ 49, discretionary appeal not allowed, 107 Ohio St.3d 1410, 2005-Ohio-5859, quoting *Welch v. Finlay Fine Jewelry Corp.*, 10th Dist. No. 01AP-508, 2002 Ohio App. LEXIS 503 (Feb. 12, 2002), quoting *DeVore v. Mut. of Omaha*, 32 Ohio App.2d 36, 38 (1972).

{¶ 23} Under pleading rules applicable in Ohio, "a plaintiff is not required to prove his or her case at the pleading stage. Very often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-45 (1991). "If the plaintiff were required to prove his or her case in the complaint, many valid claims would

be dismissed because of the plaintiff's lack of access to relevant evidence. Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *Id.*

{¶ 24} In support of dismissal, the trial court noted that "Prime does not state or otherwise demonstrate in its Amended Complaint that through discovery it could later identify the ultimate buyer." (Decision & Entry at 19.) It is evident to this court, however, that specific information identifying the buyer is necessarily within the knowledge, possession, or control of appellees, as sellers, and that such information will be readily accessible to Prime through the process of discovery. The record shows that Prime had initiated the process of discovery prior to judgment but the trial court stayed discovery pending a ruling on the motion to dismiss. Prime's amended complaint should not be subject to dismissal simply because Prime lacks immediate access to relevant evidence. *York* at 145.

{¶ 25} In *Ford v. Brooks*, 10th Dist. No. 11AP-664, 2012 Ohio 943, purchasers alleged that their real estate agent breached R.C. Chapter 4735 by sharing the purchasers' confidential information with the ultimate buyer of the property and that the agent failed to be loyal to them. The trial court dismissed purchaser's complaint for failure to state a claim for relief because the purchaser's failed to identify the specific confidential information the agent had shared with the buyer. On appeal, this court held that the trial court erred in dismissing the claim for breach of fiduciary duty as the purchasers' allegation the agent shared confidential information with the buyer of the property, without permission, was, itself, a factual allegation that appellees failed to observe a fiduciary duty owed to the purchasers. In so holding, the *Brooks* court also concluded that "[u]nder a notice-pleading standard, appellants are not required to particularly identify what confidential information Brooks allegedly shared or when that sharing allegedly occurred." *Brooks* at 15.

{¶ 26} Here, Prime's allegation that Altimate was sold to "a potential investor or equity partner of Mr. Pollak" was sufficient to provide fair notice to appellees of the nature of the action. (First Am. Compl. at 5.) Ohio's notice-pleading standard did not require that Prime identify the buyer by name or provide further information about the buyer in order to state a claim for breach of the Broker Agreement. *See Brooks.* Because there is a set of

facts, consistent with Prime's complaint, which would allow Prime to recover from appellees for a breach of the Broker Agreement, the trial court erred when it granted appellees' motion to dismiss. *Estate of Tokes* at ¶ 12; *York* at 145.

{¶ 27} We note that the trial court concluded, alternatively, the allegations in the amended complaint were insufficient to state a claim for relief because Prime failed to allege facts that would establish Pollak was a ready, willing, and able buyer on execution of the NDA. The trial court explained its reasoning as follows:

> The Court finds that the fact that Prime obtained a signed NDA from Pollak during the Selling Period does not support Prime's contention that it procured a buyer during the Selling Period. Securing a signed NDA cannot logically equate to procuring a potential buyer and thus be entitled to a commission under the Broker Agreement. If it did, then the 24-month protection period for obtained NDAs would not also require that the NDA signatory be the ultimate purchaser as well. * * * *Substantial efforts directed by a broker to a specific potential buyer does not demonstrate an ability to establish that such buyer was ready, willing, and able to buy the business.* A broker could put forth all the effort in the world to bring about a sale to an insolvent person or entity, but that person or entity would not be ready, willing, and able to purchase a business for millions of dollars. *Similarly, obtaining that insolvent party's signature on an NDA does not transmogrify the party into a ready and able buyer. Beyond Prime's alleged "substantial efforts" and Pollak's signing of the NDA, its Amended Complaint simply fails to put forth factual allegations demonstrating it could ultimately prove Pollak was ready, willing, and able to purchase Altimate's business during the Selling Period.*

(Emphasis added.) (Decision & Entry at 21-22.)

{¶ 28} The trial court's ruling adopts a construction of the broker agreement that is inconsistent with relevant language employed by the parties, as the term "ready, willing, and able buyer" does not appear in Paragraph 2 of the Broker Agreement. As we have previously determined, under the plain language of the Broker Agreement, the "ready, willing, and able" language applies only to the scenario described in Paragraph 1, Section (1), where no sale occurs.

{¶ 29} Here, it is alleged in the amended complaint that Pollak signed an NDA within the Selling Period and Pollak subsequently purchased Altimate within the 24-month period immediately following the Selling Period. Whether Pollak was a ready, willing, and able buyer at the time he signed the NDA is irrelevant to appellees' obligation to pay Prime a commission under Paragraph 2 of the Broker Agreement. The trial court recognized that "reference to the NDA in the Broker Agreement is in a paragraph separate from that which identifies the circumstances occurring during the Selling Period." (Decision & Entry at 21.) Yet the trial conflated the two paragraphs and, in so doing, created a new agreement expressing an intent not supported by the language used by the parties in the Broker Agreement. Accordingly, we hold that the trial court erred when it relied on an erroneous interpretation of the Broker Agreement in dismissing Prime's complaint.

{¶ 30} We note that Prime's amended complaint alleges alternatively, even if Pollak was not associated with the buyer at the time of sale, appellees delayed the purchase so that Pollak could divest himself of the buyer prior to the sale and appellees could avoid paying Prime's commission.[5] As the Supreme Court of Ohio has concluded, "every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement." *Lucarell* at ¶ 42, citing *Ed Schory & Sons, Inc. v. Soc. Natl. Bank,* 75 Ohio St.3d 433, 443, (1996); Restatement of the Law 2d, Contracts, Section 205 (1981). "[G]ood faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could have not been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons* at 443-44, quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990). In our view, the alternative set of facts alleged in the complaint, if proven true, establish that appellees sought to circumvent the provisions in the Broker Agreement related to Prime's commission. Thus, the amended complaint arguably states a claim for a breach of the implied duty of good faith and fair dealing in the Broker Agreement.

{¶ 31} The trial court determined that Prime's alternative allegations were nothing more than legal conclusions because Prime used the phrase "information and belief" in setting forth the factual basis of its claim. We find that Prime's allegation appellees "delayed

---

[5] The complaint alleges that in return for Pollak's cooperation, he received cash after the closing of the sale, equity ownership in two Altimate affiliates that were also being sold, a percentage of future Altimate profit. (First Am. Compl. at 5.)

closing on the sale of Altimate Care until Mr. Pollak was removed as an equity participant," was, itself, a factual allegation supporting Prime's claim appellees breached the duty of good faith and fair dealing in the Broker Agreement. *See Brooks* at ¶ 15. Moreover, pleading facts based upon the pleaders "information and belief " is expressly authorized by Civ.R. 11.[6]

{¶ 32} For the foregoing reasons, we hold that the trial court erred when it granted appellees' motion to dismiss Prime's breach of contract claim.

### 2. Unjust Enrichment

{¶ 33} Prime's amended complaint alleges at paragraph 40: "Alternatively, and in the event the Broker Agreement is determined to not extend to the period covering the sale of Altimate Care, unjust enrichment and promissory estoppel theories preclude Defendants from avoiding payment of the 7% commission to Prime."

{¶ 34} "Absent bad faith, fraud, or some other illegality, an equitable action for unjust enrichment will not lie when the subject of the claim is governed by an express contract." *Cent. Allied Ents., Inc. v. Adjutant Gen. Dept.*, 10th Dist. No. 10AP-701, 2011-Ohio-4920, ¶ 39; accord *Maghie & Savage, Inc. v. P.J. Dick, Inc.*, 10th Dist. No. 08AP-487, 2009-Ohio-2164, ¶ 33; *Morton Bldgs., Inc. v. Correct Custom Drywall, Inc.*, 10th Dist. No. 06AP-851, 2007-Ohio-2788, ¶ 32. As we have determined, the amended complaint alleges facts which, if proven, support Prime's claim for breach of the Broker Agreement based upon the sale of Altimate to Pollak in January 2019. Nevertheless, appellant's have alleged that appellees failed to act in good faith when it failed to pay Prime a commission. We are also aware that appellee's have not yet filed an answer to the amended complaint and no discovery has been conducted. Accordingly, we find that the trial court erred when it dismissed Prime's alternative claim for unjust enrichment at this early stage in the proceedings.

### 3. Promissory Estoppel

{¶ 35} Promissory estoppel claims may be pleaded alternatively to breach of contract claims, but the oral agreement on which the promissory estoppel claim is based cannot be used to alter the unambiguous written contract. *Ed Schory & Sons* at 440. "Promissory estoppel is an equitable doctrine that comes into play when the requisites of

---

[6] Civ.R. 11 provides that the "signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."

contract are not met, yet a promise should be enforced to avoid injustice." *APCO Indus. v. Braun Constr. Group., Inc.,* 10th Dist. No. 19AP-430, 2020-Ohio-4762, ¶ 60, citing *Olympic Holding Co., L.L.C. v. Ace Ltd.,* 122 Ohio St.3d 89, 2009-Ohio-2057, ¶ 39-40. " 'Promissory estoppel is inconsistent with the existence of an express written contract.' " *Kashif v. Cent. State Univ.*, 133 Ohio App.3d 678, 684 (10th Dist.1999), quoting *Warren v. Trotwood-Madison School Dist. Bd. of Edn.*, 2d Dist. No. 17457, 1999 Ohio App. LEXIS 1035 (Mar. 19, 1999). "Consequently, a plaintiff cannot recover for promissory estoppel where the promise forming the basis of that claim is contained within an express written contract." *APCO Indus.* at ¶ 60, citing *Right-Now Recycling, Inc. v. Ford Motor Credit Co., LLC*, 644 Fed.Appx. 554, 558 (6th Cir.2016); *Americana Invest. Co. v. Natl. Contracting & Fixturing, LLC*, 10th Dist. No. 15AP-1010, 2016-Ohio-7067, ¶ 13-14; *TLC Health Care Servs., LLC v. Enhanced Billing Servs.*, L.L.C., 6th Dist. No. L-08-1121, 2008-Ohio-4285, ¶ 24.

{¶ 36} Appellant's amended complaint sets forth the factual basis underlying the promissory estoppel claim as follows: "Defendants promised Prime that Prime would be paid a commission out of the sale of Altimate Care, including by representing and warranting that defendants had engaged Prime as their broker and by stating that defendants were Prime's clients. Defendants made these statements directly to Prime or knew that Prime would receive and rely on these statements." (First Am. Compl. at 8.) Because this promise is contained within the written Broker Agreement, Prime cannot obtain relief under the alleged oral agreement that forms the basis of its promissory estoppel claim. Therefore, we agree with the trial court that Prime's amended complaint fails to state a claim for promissory estoppel upon which relief may be granted, albeit for different reasons than the trial court.

## V. CONCLUSION

{¶ 37} Having sustained Prime's sole assignment of error, in part, as to dismissal of the contract claim and the unjust enrichment claim, but having overruled Prime's sole assignment of error as to the dismissal of the promissory estoppel claim, the judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part, and the matter is remanded to the trial court for further proceedings.

*Judgment affirmed in part, reversed in part, and cause remanded.*

KLATT, and SADLER, JJ., concur.

————————————